Simon, J.*
The object of this controversy is to ascertain who, of several seizing creditors of the houses of Lastrapes & Ben-guerel and Lastrapes Fréres, by virtue of whose executions, divers notes, accounts and other credits were seized and sold by the sheriff in satisfaction of judgments regularly rendered, is entitled to receive a certain amount proceeding from the sale of the property seized ? The judge, a quo, was of opinion that the plaintiff Labiche, as first seizing creditor, was entitled to the funds in dispute ; and from his judgment, the defendants have appealed.
It appears that, on the 6th of February, 1843, a writ of fieri facias was issued for a large amount, at the suit of the appellee, against Jacques Lastrapes et ah, and was levied upon the property in controversy, on the 8th of the same month. The sale was advertised by the sheriff to take place on the 4th of March ensuing, but on that day the sale was postponed to the 15th. On the day last fixed, a part of the property seized, consisting of dry goods and other articles, was sold to a certain amount, it being two-thirds of the cash estimation made on the 4th of March; when on the 17th, pending the sales, and previous to proceeding to the sale of the debts, rights, and credits levied on, the parties interested in the execution entered into a certain written agreement, in which it is specified: that “ whereas it is for the interest and advantage of all persons interested in the premises that the rights and credits (above enumerated) should not be sacrificed at sheriff’s sale, the parties interested in the suit, plaintiff and defendants, mutually agree to suspend the further execution of the writ of fi. fa. and that the Sheriff shall hold the same in his hands, the seizure of the said rights and credits, books, notes, accounts and judgments to remain in full force and virtue, and the said writ to continue in force, without removal for an indefinite period, and until further directions of all the parties hereto, or until the said rights and' credits can be collected and applied as hereinafter di *10 rected.” The agreement further stipulates that £i the whole of .the books, accounts, rights and credits, &c., shall be placed in the hands of Robert Benguerel, who shall proceed to collect the same as fast as possible, and to pay over the proceeds, as collected, to the Sheriff of St. Landry, or the plaintiff, and said proceeds shall be credited on said writ as paid overand all the parties bind themselves to hold the Sheriff harmless, and to guaranty him against any loss or damages that might result from a compliance with the agreement, &c.
On the 22d of March, another seizure was made of lands and slaves, which were advertised to be sold on the 6th May, but the sale was postponed by agreement to the 9th, when it was again postponed until further orders.
On the 17th of July following, in consequence of instructions given by plaintiff and defendants in execution, all the rights and credits, See., of said defendants which had been seized on the 8th of February, and the sale of which had been suspended, were advertised to be sold on the 5th of August, 1843, on which day the appraisement thereof was made. This advertisement recites that the property is to be sold by virtue of the seizure made on the 8th of February, 1843, and the property was so sold after several postponements, as will be hereafter noticed.
It appears, however, by the sheriff’s return on the plaintiff’s writ, and this is the origin of the controversy, that previous to the 5th of August, divers writs of fi-fa. were issued at the suits of sundry creditors of the defendants in execution, which were placed in the sheriff’s hands, and which were by him levied on the same rights, credits, notes, accounts, judgments, &c., which were in his possession under the plaintiff’s writ, and that this new seizure was notified to the debtors, defendants in the said plaintiff’s execution, on the 6th and 12th days of July, and 4th of August, 1843. Those writs are not in the record, and the facts relative to their having been issued and levied on the property in dispute, only appear by the sheriff’s return on the plaintiff’s writ, which seems to have been the only one acted upon in the sale and disposition of the property seized.
On the 5th of August, the sale was postponed Ify consent until the 8th, when the rights and credits were offered for sale for cash. *11 It produced a certain amount, and the rest was advertised to be sold on the 2d of September at twelve months’ credit. The Sheriff states in his return that, “ previous to proceeding to the sale last mentioned, it was understood and so announced that the rights and credits which had been seized on the 6th of July and 4 th of August by virtue of several executions, wouldbe offered for sale and would be sold under this writ, (meaning the plaintiff’s,) but theprocebds arising therefrom would be held in my hands subject to the orders of the proper courtand the balance, of the property seized on the 8th of February was accordingly sold on the 2d of September at twelve months’ credit, and produced a certain amount which, added to the amount of the cash sale made on the 8th of August, forms the subject of this controversy.
On the 4th of September, 1843, by instructions of the parties, the property seized on the 22d of March was advertised to be sold on the 5th of October. The sale was postponed by consent until the 2d of November, on which day the property was appraised ; a part of it was sold for cash, and the residue advertised to be sold on the 7th of December, when it was adjudicated at twelve months’ credit; and on the day last mentioned, the writ of fi, fa, was returned not satisfied.
It appears further from the sheriff’s return, that Robert Ben-guerel accounted to the plaintiff for a sum of $2038 95, under the written agreement; that Theodore Lastrapes also accounted to said plaintiff for the sum of $1152 71; and that those sums were credited on the execution, and included in the amount accounted for by the Sheriff, as having been realized under the writ. The sum in dispute, proceeding from the sales made on the 8th of August and 2d of September, amounts to $3093 19.
Two questions have been raised by the appellants’ counsel in support of the pretensions of his clients to the amount in Controversy. He has contended:
1st. That the seizures made under the plaintiffs’ fi.fa. are illegal, informal, and void as to the appellants ; that the plaintiff had no legal right to suspend the execution of his writ and to keep it in force beyond the time within which it should have been returned, and that said writ thereby lost all its force and ef- *12 feet against those, who had a legal right, after the expiration of the plaintiff’s writ, to have the property seized and sold for their benefit.
2d. That the seizure and sales made under the plaintiff’s writ are illegal and void, as the debtors of the debts and credits seized were not notified of the seizure, and might have validly paid the sums due into the hands of the defendants in execution; and that, therefore, the appellants’ seizures, and privilege resulting therefrom, ought to have the preference on the proceeds.
I. To the first question, it might perhaps, be answered at once, that the appellants themselves have participated in the irregularities and informalities by them complained of; since, although they were aware of the manner in which the plaintiff’s proceedings had been carried on, and of the suspension of the execution, they consented to cease acting under their own writs, and permitted the Sheriff to proceed to the sale of the property under the plaintiff’s execution. These writs were levied, says the Sheriff in his return, upon property already seized under the plaintiff’s writ, and nothing further was done under those writs, which, nothing shows, were ever returned. Why did not the appellants, if they really conceived that they had acquired better rights to the property seized than the plaintiff, require the Sheriff to proceed under their own executions, .or at least to proceed simultaneously with that of the plaintiff? Instead of arresting the progress of proceedings which they now say are illegal, informal and void, they consented to their being carried into effect, only reserving the question of preference on the proceeds of the sale, and fully acquiesced in the Sheriff’s acting under the exclusive authority of the plaintiff’s writ. Was not this recognizing that the levy made under said writ was legal, that the Sheriff had a right to act under it, and that the sale would be a legal one 1 If so, that alone would perhaps be sufficient to defeat their pretensions ; as, if the levy and sale were legally made, the plaintiff ought necessarily to be entitled to the benefit of all the consequences of his legal proceedings under his execution.
We have repeatedly held, that if a levy be made before the returning of the writ, the Sheriff may proceed to sell after the expiration of that day; (3 Mart. N. S. 493 ; 8 Ib. N, S. 391; 2 La. *13 277 ; 1 Rob. 540; 2 Ib. 341; and in a number of other cases ;) and the reason is, that the property levied on within the legal delay, being in the hands of the Sheriif under the authority of the writ, he ought not to be precluded from disposing of it within the object of the law and of the authority conferred upon him by the execution, by the mere expiration of a delay which the law indicates for the benefit of the seizing creditor only, by whom it may be waived. Otherwise, such expiration would be a great inconvenience, nay, even an obstacle to carrying the writ into execution; as, oftentimes, the Sheriff is prevented by circumstances from making a levy until he has made diligent searches for property on which it can be made; and as it often happens that, notwithstanding his exertions, he cannot find property to seize until the delay for returning the writ has nearly run out. The safest course, under such circumstances, is to keep the writ after the return day has expired, provided a levy has been made before, and to return it only after the sale has been completed. Every facility'should be allowed to the creditor to realize the amount of his execution, provided it be with due regard to the rights of other persons, and in accordance with the protection which the law affords to the unfortunate debtor whose property is seized, and on the eve of being sacrificed. This doctrine was to a certain extent recognized by this court in the case of Fink v. Martin, (decided in July, 1844,) in which we held that the defendant in execution cannot be deprived of the use of his property, when it cannot be sold, on account of previous incumbrances, and be compelled to see its value exhausted in unnecessary costs and expenses. As it has been very properly remarked by the judge, a quo, in his written opinion, no limit appears to have been fixed in any of our decisions to the indulgence which the creditor may extend in that respect to the debtor, when it is accorded in good faith ; and if it is in bad faith and for the purpose of protecting the property of his debtor against the pursuit of other creditors, the latter -would not be without remedy.
In this case, however, the parties to the agreement under which the-sale was suspended, had no such object in view; their acts are free from suspicion; the object was to prevent a sacrifice of the property seized, and render it as productive as possible ; *14 and if they all consented to the Sheriff’s putting the debts and credits under seizure, into the hands of Robert Benguerel, for the purpose of being collected as fast as possible, they also stipulated that the Sheriff should hold the writ in his hands, that the seizure should remain in full force and effect, that the writ should continue in force, and that Benguerel should pay over the proceeds as collected to the Sheriff, or the plaintiff, to be credited on the execution. This was .done under the agreement for the advantage of the debtors, and without injury to any body else; and, under such circumstances, considering also that the appellants’ rights did not exist at the time of the agreement, and only commenced to vest about the time that the sale of the property was advertised to be made on the 5 th of August, we cannot see any valid reason why the original levy should be invalidated, particularly when it is shown that the Sheriff never lost his control over the property seized ; that on the contrary the possession of Benguerel was that of the Sheriff, to whom he was bound to pay the money, and that the appellants, after mating a levy on the same articles, gave their unqualified consent to the sale thereof being made by virtue of the plaintiff’s levy and under his execution. They reserved, it is true, their right of having the distribution of the proceeds regulated by the proper court; but this was acknowledging, virtually, the legality of the seizure and the sale; as, if any balance had remained of its proceeds after satisfying the plaintiff’s claim, the appellants would clearly have been entitled to receive it under their subsequent seizure.
We conclude, therefore, that the levy made for the plaintiff was perfectly legal and valid; that no fraud, bad faith, or collusion being imputed to the parties to the agreement,'they had a right to suspend the sale, and to cause it to be made after the return day; that in the mean time, the property seized never ceased to be under the control of the Sheriff to whom the funds were to be paid and credited on the writ; that the appellants, having consented to give effect to the levy by permitting the sale to be made under the plaintiff’s execution, cannot be allowed to attack its legality ; and that the judge, a quo, did not err in maintaining the plaintiff’s right to its proceeds in preference to the defendants, *15 by virtue of whose executions and levies the property was not sold. Code Prac. art. 722.
II. We cannot see the object of this point: The appellants’ levy never had its effect by the sale of the property levied on under their writs ; and thus, there are no conflicting sales from which the question could be raised, which is the best 1 And it seems also, that the said appellants cannot avail themselves of the want of notice, if it be an irregularity, because they all appear to have had full knowledge of the proceedings which were carried on with their consent. But be this as it may, there was clearly no necessity for the Sheriff’s giving notice to the numerous debtors of the debts and credits seized, that the sale thereof was made; such notice is necessary only after transfer, or assignment of the debt. Civ. Code, arts. 2612, 2613, 2614. In the case of a seizure of a debt, such seizure does not transfer it to, or vest the property in it in the séizing creditor; but merely gives to the latter the right to be paid from the proceeds of the sale, or transfer thereof to another person. The Sheriff must be considered as transferee of the debt by him seized; he acts merely as the agent of the parties ; but the defendant, until the sale, is not divested of his title to the object seized ; he still continues to own it, so much so that he may take it out of the Sheriff’s hands,'on paying the amount of the execution, in principal, interest and costs. Our Code of Practice has not provided for the formality of giving notice to the debtor of a debt or credit seized under execution. No such requisite is found in it. It may be prudent to give it, to prevent payments, but the only notice to be given is that which the defendant is to have ; and we do not feel disposed to legislate upon this subject byrequiring a formality whichmur laws have never contemplated in cases of seizure under execution. Code Prac. arts. 642, 643, 654, 655, 666, 677.

Judgment affirmed.

 Garland, J. did not sit on the trial of this case, in consequence of relationship to some of the parties.