STONE, J.
A jury found Edward K. Johnson guilty of aggravated rape in violation of La. R.S. 14:42. He received a mandatory life sentence at hard labor without benefit of probation, parole or suspension of sentence. Johnson now appeals asserting four assignments of error. For the following reasons, we affirm his conviction and sentence.
FACTS AND PROCEDURAL HISTORY
On June 18, 2015, 53-year-old Edward K. Johnson ("Johnson") was indicted for the aggravated rape of A.D., who was born on April 22, 2008.[1] The bill of indictment alleged the offense occurred between January and March of 2015, when A.D. was six years old. On August 16, 2017, a jury unanimously found Johnson guilty as charged. On September 11, 2017, Johnson filed a motion for new trial and motion for post-verdict judgment of acquittal. Both were denied by the trial court. Thereafter, the trial court sentenced Johnson to mandatory life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence.
Johnson now appeals asserting four assignments of error: 1) there was insufficient evidence to support the conviction; 2) the trial court erred in denying his request to allow an expert to review A.D.'s Gingerbread House interview prior to trial; 3) the trial court erred in allowing the state to reference other crimes evidence outside the scope of its La. C. E. art. 412.2 notice; and 4) the trial court erred by denying him the opportunity to conduct a Daubert hearing as to Kiersten Prochnow's testimony.
DISCUSSION
Sufficiency of the Evidence
The state is required to prove beyond a reasonable doubt that Johnson engaged in anal or oral sexual intercourse with A.D. without his lawful consent because it was committed when A.D. was under the age of 13 years. La. R.S. 14:42(A)(4). After a review of the evidence presented at trial, we find it sufficient to support Johnson's conviction.
Johnson's trial began with the testimony of A.D, who testified he was now nine years old. A.D. identified Johnson in open court and stated Johnson was "his momma's boyfriend." The state then played the videos of A.D.'s Gingerbread House interviews. A.D. testified he remembered talking to the interviewer, Alex Person ("Person"), *891 on more than one occasion and that everything he told her was true. A.D. was interviewed by Person at the Gingerbread House on three separate occasions; those interviews are summarized as follows:
Statement # 1 on April 2, 2015 : A.D. stated he was six years old and living with his grandmother, his uncle, "E.N.," and his aunt, Jaime. A.D. stated he used to live with Johnson and his mother, K.H., at Johnson's house. A.D. stated he would ride with Johnson in one of his two trucks. During the interview, Person assured A.D. that it is her job to help keep kids safe and make sure no one is doing things they are not supposed to do. After Person demonstrated what private parts were, A.D. denied anyone touched his private parts.
Statement # 2 on April 6, 2015 : Person spoke further with A.D. about his home life and the people in it. A.D. did not disclose any sexual abuse. Prior to ending the interview, Person told A.D. she knew something had happened to him, and they would come back later that afternoon to talk about it.
Statement # 3 on April 6, 2015 : Person again told A.D. she knew something had happened to him and that they had to talk about it. Person showed A.D. a piece of paper with a boy drawn on it and asked A.D. to draw a circle around the boy's private parts. Thereafter, she asked A.D. to identify the private parts that no one is supposed to touch. Person told A.D. that if someone ever touched his private parts, A.D. had to tell someone. When asked again if anyone had touched his private parts, A.D. answered yes, his "Grandpa, Ed." A.D. stated Johnson put his private in his "butt." A.D. stated Johnson did this multiple times and at different places, while no one else was around. A.D. stated it happened multiple times at Johnson's house in his bedroom. A.D. said Johnson made him lie down, and Johnson was behind him. A.D. said he would tell Johnson to stop but Johnson said no. A.D. stated the abuse also happened multiple times at Johnson's Bossier City shop, "behind the bowling alley." Additionally, A.D. said the sexual abuse happened multiple times while they were in Johnson's truck in the parking lot of Albertsons. A.D. said Johnson had a blue truck and a black truck. A.D. said "He put his penis in my butt." A.D. stated Johnson would sometimes put something clear from a "big, plastic bottle," on his private. A.D. said he was six years old when Johnson started doing this behavior and that he told his mother, but she did nothing about it so he told his grandmother. A.D. stated Johnson warned him not to tell anyone because he would get taken away.
During cross-examination, A.D. testified he and Johnson were alone when Johnson abused him in the Albertsons parking lot, and that no one walked by as it happened. He testified the abuse at Johnson's house would occur at night in Johnson's bedroom when no one else was home. A.D. testified the abuse at Johnson's shop occurred when he was alone with Johnson in "this little place" at the shop that "had a couch and a few chairs and the bathroom." A.D. testified Johnson would make him lie down on the couch without clothes. At the end of cross-examination, A.D. reiterated that everything he said in his Gingerbread House interviews was true.
The state presented the testimony of A.D.'s grandmother, D.N. Besides K.H., D.N. had three other children: Brandon, Jamie, and E.N.[2] D.N. testified K.H. was *892 married to Johnson's stepson but her daughter was "intimately involved" with Johnson. D.N. testified she has known Johnson for about seven years and had considered him a friend. She stated Johnson had done a lot to help her family financially, and that they all spent a lot of time together at Johnson's house and shop.
D.N. testified A.D. disclosed the sexual abuse to her "a little at a time." D.N. testified she first learned of the abuse in April of 2015 when A.D. told her, in his own words, Johnson "stuck his dick in my ass." She also testified A.D. told her that while K.H. was in Albertsons shopping, Johnson would make A.D. put his mouth on Johnson's penis. At the time A.D. first disclosed the abuse, he was still living with K.H. and Johnson at Johnson's home. D.N. stated she responded to A.D.'s allegations by calling K.H. to come home so A.D. could tell his mother what had happened. Two days later, when K.H. had not removed A.D. from the home, D.N. took A.D. to her home and reported the abuse to authorities.
The state presented the testimony of E.N., A.D.'s 15-year-old uncle. E.N. testified he had been friends with Johnson for years, and that he and his family often hung out at Johnson's house and shop. E.N. testified that in early 2015, he had been staying at Johnson's house for several months. E.N. was not in school at the time and had been using an online home-schooling program. E.N. testified in January or February 2015, he had been working with Johnson at his shop all night. E.N. testified that while he was sitting in Johnson's car hauler, Johnson came into the car hauler, dropped his pants, and said, "Well, come on, just suck it." E.N. testified Johnson asked him to have anal sex with him and told him that "It's just like doing it with a girl, just stick it in me." E.N. detailed the incident to Person at the Gingerbread House. A video of E.N.'s Gingerbread House interview was played for the jury. E.N.'s recollection of the incident during his Gingerbread House interview was consistent with his trial testimony.
E.N. testified that after the incident he called his mother and told her that he was ready to come home, but he was hesitant to upset his mother by telling her what happened. He testified that when he told his mother what happened several days later, she appeared shocked. E.N. further stated when A.D. heard about what happened between him and Johnson, A.D. disclosed what Johnson did to him. From his mother's reaction, E.N. thought this was the first time his mother had heard about what Johnson did to A.D., but he did not know this for certain.
The state presented the testimony of Person, a forensic interviewer and educational coordinator for the Gingerbread House Children's Advocacy Center in Shreveport; she was accepted without objection as an expert in forensic interviewing, delayed and reluctant reporting, and child sexual assault. Person stated she was trained to conduct forensic interviews of children who were physically or sexually abused. Person testified she was trained to use a "non-leading narrative practice" which avoids the use of leading questions so that the child's statement is in the child's own words. The forensic interviewer uses open-ended questions and allows the child to narrate through his or her answers. Person testified that, by using this technique, the interviewer avoids giving the child information that the interviewer already knows, so that the child's disclosure is not interrupted or coached.
*893 Prior to interviewing A.D., Person had been informed that A.D. had already disclosed the sexual abuse to family members. Person determined A.D. was reluctant to talk about the abuse because he looked down and shook his head no in response to her questions, instead of simply saying "No." Consequently, she determined an extended forensic interview, done in three separate interviews, was appropriate. Person testified she interviewed A.D. once on April 2, 2015, and twice on April 6, 2015. Person testified that during the third interview, A.D. reported a person he called "Grandpa Ed" stuck his private part in his butt. Person testified A.D. told her the sexual abuse occurred at "Grandpa Ed's" house and shop and in the parking lot at Albertsons.
Kiersten Prochnow ("Prochnow") testified she was a mental health counselor assigned to A.D.'s elementary school. Prochnow stated A.D. was referred to her for counseling, and that she treated him from September 2016 to April 2017. Prochnow testified A.D. was shy, reserved, closed off, and angry. She also stated A.D. displayed aggression, destructive behavior, anxiety, and bedwetting. Prochnow stated she began "trauma-focused" treatment after A.D.'s responses to a trauma and behavior screening indicated he had been sexually abused. Prochnow testified A.D. indicated to her that he was "most" bothered by Johnson's sexual abuse, and that the abuse had happened more times than he could remember.
Prochnow used toy dolls to demonstrate to the jury what A.D. showed her in therapy when she asked him what happened. She stated A.D. placed two dolls violently together, one under the other, and told her that one doll was Johnson and the other was himself. In another scenario, he demonstrated one doll, who A.D. told her represented himself, giving oral sex to the other doll, who A.D. told her represented Johnson. Prochnow testified that as A.D. demonstrated these acts with the dolls, he would turn his head away as far as he could. Prochnow testified A.D. specified that one doll was Ed, his grandpa, and the other doll was himself. Prochnow testified A.D.'s demonstration with the dolls represented to her the acts of oral sex and anal sex.
Jennifer Rodriguez, M.D. ("Dr. Rodriguez"), testified she is a pediatrician with the LSU Health Sciences Center and the Cara Center, an offsite clinic for the evaluation of suspected child abuse and neglect. Dr. Rodriguez was accepted without objection as an expert in pediatrics, specializing in child abuse. Dr. Rodriguez testified she examined A.D. at the Cara Center on April 7, 2015, to evaluate allegations of anal abuse. She stated her findings were normal. Dr. Rodriguez asserted the majority of children who are sexually abused have no acute or chronic findings unless the exam is done immediately after the assault. She also noted the anus heals quickly. Dr. Rodriguez further stated painful bowel movements can be consistent with anal abuse, but can also be caused by constipation, hemorrhoids, pinworms, and poor hygiene.
Detective Michael Jones ("Detective Jones") of the Shreveport Police Department testified he investigated the sexual abuse allegations against Johnson. Detective Jones testified A.D.'s statement alleged sexual abuse at Johnson's house in Shreveport, at Johnson's shop in Bossier City, and in Johnson's trucks while parked at an Albertsons near Johnson's house. Johnson was interviewed by Detective Jones and another detective from the Bossier City Police Department. The audio of the interview was played for the jury. During the interview, Johnson denied he sexually *894 abused A.D., but admitted the incident alleged by E.N. "could have happened."
After the state rested its case, the defense presented the testimony of several witnesses. Notably, Krystal Ard ("Ard"), Johnson's niece, testified she lived with Johnson at his home for a brief period of time while A.D. and K.H were living there. Ard testified A.D. was a troubled, angry, and destructive child, who would scream, throw tantrums, and beat his head on the floor and wall. Ard also testified A.D. tried to hurt the pets at the house, and that he once set his clothes on fire with a lighter. She stated A.D. followed Johnson around like a puppy, and that he would cry to stay at Johnson's house when his grandmother D.N. would come to get him. Johnson testified on his own behalf and stated he did not have oral or anal sex with A.D. He also denied the allegations made by E.N.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979) ; State v. Tate, 2001-1658 (La. 5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed. 2d 248 (2004) ; State v. Carter, 42,894 (La. App. 2 Cir. 1/9/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086 ; State v. Robinson , 50,643 (La. App. 2 Cir. 6/22/16), 197 So.3d 717, 719, writ denied , 2016-1479 (La. 5/19/17), 221 So.3d 78. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La. 2/22/06), 922 So.2d 517 ; State v. Dotie, 43,819 (La. App. 2 Cir. 1/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/6/09), 21 So.3d 297 ; State v. Robinson,supra .
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983) ; State v. Speed, 43,786 (La. App. 2 Cir. 1/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/6/09), 21 So.3d 299 ; State v. Robinson,supra .
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen , 36,180 (La. App. 2 Cir. 9/18/02), 828 So.2d 622, writs denied , 2002-2595 (La. 3/28/03), 840 So.2d 566, 2002-2997 (La. 6/27/03), 847 So.2d 1255,cert. denied , 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed. 2d 90 (2004). The appellate court neither assesses the credibility of witnesses nor reweighs evidence. State v. Smith , 94-3116 (La. 10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Eason , 43,788 (La. App. 2 Cir. 2/25/09), 3 So.3d 685, writ denied, 09-0725 (La. 12/11/09), 23 So.3d 913 ; State v. Hill , 42,025 (La. App. 2 Cir. 5/9/07), 956 So.2d 758, writ denied, 07-1209 (La. 12/14/07), 970 So.2d 529. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's *895 testimony, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. State v. Wiltcher , 41,981 (La. App. 2 Cir. 5/9/07), 956 So.2d 769 ; State v. Burd , 40,480 (La. App. 2 Cir. 1/27/06), 921 So.2d 219, writ denied , 2006-1083 (La. 11/9/06), 941 So.2d 35.
At Johnson's trial, the evidence presented by the state established all of the elements necessary to prove beyond a reasonable doubt that he committed the offense of aggravated rape. Since A.D. was six years old at the time of the alleged sexual abuse, he was unable to lawfully consent to oral or anal sex with Johnson. A.D.'s Gingerbread statement and testimony courageously detailed multiple acts of anal rape at three different locations and specifically named Johnson as the offender. Due to the consistency of the allegations A.D. made to his grandmother, Person, and Prochnow, any rational trier of fact could have concluded Johnson committed acts constituting anal rape upon A.D.
Johnson argues the state's case rests solely on A.D.'s testimony, which alone is insufficient to support his conviction. To the contrary, this court has repeatedly held the sole testimony of a sexual assault victim is sufficient to support a requisite factual finding. State v. Norman, 51,258 (La. App. 2 Cir. 5/17/17), 222 So.3d 96, writ denied , 2017-1152 (La. 4/20/18), 240 So.3d 926 ; State v. Demery , 49,732 (La. App. 2 Cir. 5/20/15), 165 So.3d 1175. Moreover, this court has stated such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the commission of the offense by the defendant. Norman,supra ; State v. Ponsell , 33,543 (La. App. 2 Cir. 8/23/00), 766 So.2d 678. The unanimous verdict in the instant matter indicates the jurors found A.D.'s testimony credible, and their decision should not be disturbed on appeal. Eason,supra; Hill,supra .
Denial of Motion to Allow Expert Witness to Review Gingerbread House Video
In La. R.S. 15:440.1, et seq. , the Louisiana Legislature declared that protected persons who were the victims of violent crime should not be subjected to more "intrusion" than necessary, so a hearsay exception was created to allow the videotape of an interview conducted with the victim to be presented as evidence at trial when the victim is 17 years of age or younger or has a developmental disability. See State v. Roberts , 42,417 (La. App. 2 Cir. 9/19/07), 966 So.2d 111, 119.
The admissibility of such video statements is explained in La. R.S. 15:440.5. The statute provides the following: 1) conditions under which a protected person's videotaped statement will be admissible; 2) protections afforded a defendant in regards to his constitutional right to confront and cross-examine his accuser; and 3) specific restrictions on individuals granted access to the protected person's video statement. The statute stipulates that the video statement is only admissible if the protected person is available to testify. La. R.S. 15:440.5(A)(8). The statute further specifies that the defendant may call the protected person as a witness and specifies that nothing in the statute may be construed to preclude the defendant's right to confrontation. La. R.S. 15:440.5(B).
On July 28, 2017, Johnson filed a pretrial motion requesting his expert witness, Dr. Shelly Visconte ("Dr. Visconte"), be allowed to review the video of A.D.'s three Gingerbread House statements. Johnson argued La. R.S. 15:440.5 allows his attorney's regular staff, secretary, and investigator to view the video statements and that there would be no added intrusion to the privacy of the protected person, *896 A.D., by allowing his expert to view them. Johnson further argued that access to the video statements was necessary so that Dr. Visconte could provide the proper preparation for trial that all expert witnesses would be expected to provide. The state opposed the motion, arguing expert witnesses were not included within the restrictive list of persons allowed to view the video statements.
After a hearing on the matter, the trial court denied the motion because Dr. Visconte did not fall within the restricted list of persons allowed access to the video statements under La. R.S. 15:440.5. On August 7, 2017, this court denied Johnson's application for supervisory review of the ruling. On appeal, Johnson argues that the trial court erred in denying his motion.
La. R.S. 15:440.5(C) provides a restricted list of the persons who are granted access to the protected person's video statement.
If the defendant's attorney is provided a copy of the videotaped statement by court order or by permission of the district attorney, only the following persons involved in preparing the defense of the instant charges shall be permitted to view the videotape: the attorney and his regularly employed staff, the defendant, the defense investigator designated to work on the case, the defense paralegal designated to work on the case, and other staff members of the attorney who are transcribing the videotaped oral statement.
(Emphasis added.)
La. R.S. 15:440.5(C) is quite specific as to whom access to the protected person's video statements will be granted to: regularly employed staff, the defense investigator assigned to the case, the paralegal assigned to the case, and staff members who are transcribing the videotaped oral statement. Due to the particularity of the statute, it is clear the legislature did not intend for every person hired by the defendant's attorney to have access to the protected person's video statements. Since the statute does not specify that expert witnesses may have access to the statements, the trial court did not err in denying Johnson's motion.
We note Johnson argues the trial court's ruling impinged on his right to prepare a defense and his confrontation right under the Sixth Amendment and La. Const. art. 1, § 16. However, Johnson's right to prepare his defense was not compromised because Johnson, his attorney, and his attorney's staff had access to the video before trial. Moreover, Johnson's constitutional right of confrontation was not violated because the video statement was only admissible if A.D., the protected person, was available to testify and be cross-examined at trial; A.D. testified and was cross-examined at trial. Furthermore, Johnson's attorney was able to cross-examine Person, the person who conducted the interview. This assignment of error is without merit.
Denial of Motion for Mistrial
During its opening statement at Johnson's trial, the state made the following remark:
Ladies and gentlemen, the evidence will also bring forth another witness, E.N., who was A.D.'s teenage uncle. And E.N. will tell you all about what the defendant did to him as well. How he propositioned him for sex and how he even gave this teenage boy illicit drugs, methamphetamine.
The remark was in reference to E.N.'s Gingerbread House interview in which E.N. asserted prior to Johnson asking him for oral and anal sex, Johnson insisted E.N. smoke methamphetamine with him.
*897 Johnson objected to the statement and immediately moved for a mistrial arguing the prosecution improperly referenced evidence of other crimes without first providing him with notice pursuant to La. C.C. 412.2. The state responded by asserting it properly notified Johnson of its intent to introduce such evidence in its "412.2 Notice" filed on July 17, 2017. Additionally, the state argued the statement was permissible without notice under La. C. Cr. P. art. 720 because Johnson's providing E.N. with methamphetamine was an integral part of his propositioning E.N. for oral and anal sex.[3] The trial court overruled Johnson's objection and denied his motion for a mistrial.
On appeal, Johnson again argues the state's reference to his drug use with E.N. in its opening statement was inadmissible evidence because the state failed to give reasonable notice, as required under La. C.E. art. 404(B) and La. C.E. art. 412.2. Johnson also argues the state's comment about the inadmissible evidence before the jury, in violation of La. C. Cr. P. art. 770(2), warranted a mistrial.
La. C.E. art. 404(B) provides that, except as provided in La. C.E. art. 412, evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, of the nature of any such evidence it intends to introduce at trial for such purposes, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
La. C.E. art. 412.2 provides that when an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403. In a case in which the state intends to offer evidence under the provisions of Article 403, the prosecution shall, upon request of the accused, provide reasonable notice in advance of trial of the nature of any such evidence it intends to introduce at trial for such purposes.
In its "412.2 Notice" filed on July 17, 2017, the state notified Johnson of its intent to introduce at trial evidence of Johnson's sex offense against E.N. The notice specifically referred to police reports provided in discovery which revealed E.N.'s Gingerbread House statement disclosed Johnson offered and insisted E.N. smoke methamphetamine prior to exposing himself to E.N. and asking for oral and anal sex.
Prior to admitting the video of E.N.'s Gingerbread House statement into evidence, the trial court asked if there were *898 any objections to its admission and the defense responded, "only previous objections." The trial court then ordered the video be played for the jury. Thereafter, the video was admitted into evidence without any additional objections. Since the trial court found the video admissible and the state provided adequate notice of its intent to introduce the "other crimes evidence" discussed in the video, we cannot find the trial court erred in denying Johnson's motion for a mistrial.[4]
Denial of Motion to Conduct a Daubert Hearing
During discovery, Johnson's defense learned A.D.'s school counselor, Kiersten Prochnow, had treated A.D. for post-traumatic stress disorder ("PTSD") resulting from his sexual abuse. On July 28, 2017, Johnson filed a pretrial motion requesting a Daubert hearing to determine whether Prochnow's testimony at trial regarding the sex abuse allegations and treatment for PTSD would comply with the Daubert standards.[5]
At a hearing on July 31, 2017, the state announced Prochnow was not being called to testify about A.D.'s PTSD. Instead, the state said Prochnow was only being called as a fact witness to testify about what A.D. told her regarding the acts of sex abuse and the identity of the person who committed the acts. Since Prochnow was not testifying as an expert witness, the state argued a Daubert hearing was unnecessary. The defense objected on grounds that the jury would still believe Prochnow was testifying as an expert since she was a mental health professional and had treated A.D.
Relying on the state's assertion that Prochnow would only testify as a fact witness, the trial court denied Johnson's motion for a Daubert hearing. The trial court ordered the state to instruct Prochnow that she could not make any statements as to whether or not she believed A.D. was raped. On August 7, 2017, this court denied Johnson's application seeking supervisory review of the ruling.
On appeal, Johnson argues despite the state's agreement that Prochnow would be called only as a fact witness, he still had the right to challenge the methodology that Prochnow used in her therapy sessions with A.D. Johnson contends that the trial court's denial of his motion limited his rights to a fair trial and impinged upon his constitutional rights to confront and cross-examine his accusers.
The trial court is obligated to act as a gatekeeper to ensure that any scientific testimony or evidence admitted is reliable and relevant, in order to regulate the subjects and theories about which an expert may testify. Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed. 2d 469 (1993). Reliability of expert testimony is assessed according to whether there is a valid scientific connection between the expert testimony and the issues and whether the reasoning or methodology is scientifically valid and can be properly applied to the facts of the case. State v. Foret , 628 So.2d 1116 (La. 1993).[6]
*899 "It is important to note, however, that there is a crucial difference between questioning the methodology employed by an expert witness and questioning the application of that methodology or the ultimate conclusions derived from that application. Only a question of the validity of the methodology employed brings Daubert into play." Robertson v. Doug Ashy Bldg. Materials, Inc. , 10-1552 (La. App. 1 Cir. 10/4/11), 77 So.3d 339, writ denied , 11-2468 (La. 1/13/12), 77 So.3d 972, and writ denied , 11-2430 (La. 1/13/12), 77 So.3d 973.
The party demanding a pretrial Daubert hearing requesting the determination of the reliability of evidence must set forth sufficient allegations showing the necessity for such a determination. State v. Hampton , 15-1222 (La. App. 4 Cir. 12/23/15), 183 So.3d 769, writ denied , 16-0124 (La. 3/14/16), 189 So.3d 1073. The trial court has discretion on whether or not to hold a Daubert - Foret hearing. Id.
Since the state agreed to present Prochnow as only a fact witness, and limited her testimony to what A.D. disclosed to her regarding the acts of sexual abuse and who committed the acts, the trial court did not err in denying Johnson's motion to conduct a Daubert hearing. Johnson makes no argument on appeal that Prochnow's testimony exceeded the scope of the state's agreement. Moreover, Johnson's right to confront Prochnow was not impinged because Johnson was still free to question Prochnow during cross-examination about her methodologies.
CONCLUSION
For the foregoing reasons, Johnson's conviction and sentence are affirmed.
AFFIRMED.

Pursuant to La. R.S. 46:1844(W), initials are used in place of the names of all minors and victims of sexual abuse, as well as the names of their family members, in order to protect their identity.

E.N. was a minor at the time of trial and this matter includes evidence of sexual abuse allegations made by him against Johnson.

La. C. Cr. P. art. 720 provides: "Upon written motion of defendant, the court shall order the district attorney to inform the defendant of the state's intent to offer evidence of the commission of any other crime admissible under the authority of Code of Evidence Articles 404 and 412.2. However, that order shall not require the district attorney to inform the defendant of the state's intent to offer evidence of offenses which relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding or other crimes for which the accused was previously convicted."

La. C. Cr. P. art. 770(2) provides that upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible.

Daubert v. Merrell Dow Pharm., Inc. , 509 U.S. 579, 589, 113 S.Ct. 2786, 2795, 125 L.Ed. 2d 469 (1993).

In Foret,supra, the Louisiana Supreme Court adopted the requirements set forth in Daubert .