STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

2024 KA 0078

STATE OF LOUISIANA

VERSUS

ANTHONY J. TIPTON

Judgment Rendered: **DEC 1 0 2024**

* * * * * * *

On Appeal from the 19th Judicial District Court
In and for the Parish of East Baton Rouge
State of Louisiana
Trial Court No. 06-16-0468, Section 7

Honorable Beau Higginbotham, Judge Presiding

* * * * * * *

| | |
|---|---|
| Hillar C. Moore, III<br>District Attorney<br>Jerri Ann Lee<br>Assistant District Attorney<br>Baton Rouge, Louisiana | Attorneys for Appellee<br>State of Louisiana |
| Jacob Longman<br>Kathryn Jakuback Burke<br>Brady Skinner, III<br>F. Richard Sprinkle<br>Baton Rouge, Louisiana | Attorneys for Defendant/Appellant<br>Anthony J. Tipton |

* * * * * * *

**BEFORE: GUIDRY, C.J., PENZATO, AND STROMBERG, JJ.**

**PENZATO, J.**

The defendant, Anthony J. Tipton, was charged by grand jury indictment with first degree rape of a victim under thirteen (Count One), a violation of La. R.S. 14:42(A)(4), molestation of a juvenile under thirteen (Count Two), a violation of La. R.S. 14:81.2(A)(1) and (D)(1), and sexual battery of a victim under thirteen (Count Three), a violation of La. R.S. 14:43.1(A)(1) and (C)(2). He pled not guilty and, following a jury trial, was found guilty as charged on each count. As to Count One, the trial court sentenced the defendant to life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. On each of Counts Two and Three, the trial court sentenced the defendant to ninety-nine years imprisonment at hard labor with twenty-five years to be served without benefit of parole, probation, or suspension of sentence, with each sentence to run consecutively to each other. The defendant now appeals, designating three assignments of error. For the following reasons, we affirm the defendant's convictions and sentences.

## FACTS

In May of 2016, eight-year-old A.C.[1] lived part-time with her mother and the defendant, her mother's boyfriend, in Baton Rouge.[2] While spending a weekend at her grandmother's apartment, A.C. disclosed to her grandmother that the defendant had penetrated her mouth with his penis, as well as penetrated her vagina with his hands. Her grandmother informed A.C.'s father, who then called the police. Following an investigation, the defendant was arrested for the instant offenses.

## RIGHT TO IMPARTIAL JURY

In his first assignment of error, the defendant asserts the trial court violated his right to a fair trial under the Sixth Amendment. Specifically, the defendant

---

[1] Because these charges involve sex offenses, we reference the victim by her initials only. See La. R.S. 46:1844(W).

[2] At the time, A.C.'s parents shared custody of A.C.

2

argues he was denied a fair trial because the trial court failed to ensure the jury venire was comprised of a fair cross-section of the public in East Baton Rouge Parish, contending convicted felons were excluded. He further argues the trial court failed to investigate possible jury taint during voir dire when a potential juror made statements about the defendant's presumption of innocence in the presence of other prospective jurors.

**Defective Jury Venire/Juror Qualifications**

This matter proceeded to trial by jury on October 25, 2021. At the start of jury selection, the entire jury pool entered the courtroom, and the trial court read all of the qualifications for serving as a juror under La. Code Crim. P. art. 401(A). However, the trial court stated one of the qualifications was that a person must not be under indictment for or convicted of a felony for which they have not been pardoned, which was the law in effect until July 31, 2021.[3] See La. Code Crim. P. art. 401(A)(5) (prior to amendment by 2021 La. Acts, No. 121, § 1). The defendant did not object to the use of the outdated article or move to quash the jury venire. After no jurors indicated they were unqualified, the minute clerk called the first panel of fourteen prospective jurors, and the trial court began its voir dire examination.

On appeal, the defendant argues the trial court improperly instructed potential jurors on the current qualification requirements for prior felony convictions. He further argues the 19th Judicial District Court (19th JDC) failed to implement Act 121, thereby excluding from the general jury venire felons who were now qualified to serve on the jury. Thus, according to the defendant, the jury was selected from an improperly drawn venire, and as a result, his constitutional right to a fair trial was violated. He contends his indictment should therefore be quashed.

---

[3] The current version of La. Code Crim. P. art. 401(A)(5) states, in order to qualify to serve on a jury, a person shall not be under indictment, incarcerated under an order of imprisonment, or on probation or parole for a felony offense within the five-year period immediately preceding the person's jury service.

3

Based on the record before us, we find the defendant failed to adequately preserve for review the issue of whether the jury venire was properly drawn and selected. A motion to quash is the proper procedural vehicle for alleging the general or petit jury venire was improperly drawn, selected, or constituted. La. Code Crim. P. art. 532(9). The motion must be filed in writing prior to the beginning of the jury selection. See La. Code Crim. P. arts. 521, 532(9), 535(C), and 536; State v. Smith, 2017-1333 (La. App. 1st Cir. 2/21/18), 2018 WL 1007350, *4 (unpublished), writ denied, 2018-0405 (La. 2/18/19), 265 So.3d 771. A defendant who does not file a motion to quash on the ground the jury venire was improperly drawn, selected, or constituted in accordance with the timeliness and form requirements set forth in the Louisiana Code of Criminal Procedure waives his objection. See State v. Brown, 2016-0998 (La. 1/28/22), 347 So.3d 745, 798, cert. denied, ___ U.S. ___, 143 S.Ct. 886, 215 L.Ed.2d 404 (2023).

In State v. Lewis, 2023-616 (La. App. 3d Cir. 4/17/24), 387 So.3d 747, 749, the Calcasieu Parish Clerk of Court's jury summonses failed to implement Act 121. After the defendant was convicted, he moved for a new trial, challenging the composition of the jury venire and alleging the jury summonses were defective. The trial court denied the motion. On appeal, the defendant argued his right to an impartial jury was violated because convicted felons were excluded from the jury venire and, thus, the jury was improperly drawn. Id. at 750. However, because the defendant failed to file a timely motion to quash on the ground that the jury venire was improperly drawn, the appellate court found the defendant waived the issue. Id. at 751.

As in Lewis, the defendant herein failed to file a motion to quash the general jury venire or petit jury venire based on an improperly drawn venire, which the defendant concedes on appeal. The defendant did not raise the issue to the trial court at any time, nor did he object to convicted felons being excluded from the venire.

4

See *Lewis*, 387 So.3d at 751; see also *State v. Armentor*, 2019-1267 (La. App. 1st Cir. 7/31/20), 309 So.3d 762, 771-72, writ denied, 2020-01032 (La. 2/17/21), 310 So.3d 1149 (defendant waived review of exclusion of young persons from jury venire where he failed to file pre-trial motion to quash based on improperly drawn or selected jury venire). After voir dire, once a jury was selected, the defendant likewise failed to move to quash the jury venire based on an improperly selected jury.

Moreover, La. Code Crim. P. art. 419(A) provides, "[a] petit jury venire shall not be set aside for any reason unless fraud has been practiced, some great wrong committed that would work irreparable injury to the defendant, or unless persons were systematically excluded from the venires solely upon the basis of race." The defendant bears the burden of proving the grounds for setting aside the venire. *State v. Lee*, 559 So.2d 1310, 1313 (La. 1990). The defendant herein relies upon a statement made by a trial judge in another division of the 19th JDC that the software used by the 19th JDC and its jury coordinator to select its venire was not updated to be in compliance with Act 121 until January 2023, but offered no evidence that the venire was improperly drawn in this case. He further failed to provide any evidence of fraud, a great wrong committed that would work irreparable injury to him, or that persons were systematically excluded from the venire solely upon the basis of race.

Finally, as for the trial court's error in reading the improper qualifications, the defendant did not object to such error. Thus, the defendant's claim of a defective jury venire is not properly before this court and/or lacks merit. See La. Code Crim. P. art. 841; *Lewis*, 387 So.3d at 751; *Armentor*, 309 So.3d at 772.

**Alleged Jury Taint**

During voir dire examination of the fourth and final jury panel, potential juror David Rhoden identified himself as an officer with the Baton Rouge Police Department and stated he was engaged to a potential juror from the third jury panel,

5

Beverly Moser.[4] Mr. Rhoden stated he spoke to Ms. Moser daily, noting they discussed the specifics of their work days upon returning home. When defense counsel asked if it would be difficult not to discuss the case with Ms. Moser if they were both selected to serve on the jury, Mr. Rhoden responded they would both know they could not discuss it. Defense counsel then asked what Mr. Rhoden would do if he and Ms. Moser had different opinions as to the defendant's guilt while deliberating, at which point the following exchange occurred:

A:          I mean, I'm pretty hard headed. If I've got my mind up, it's going to be hard for anybody to change my mind, so I don't know how that would pan out.

Q:          You don't have any beliefs or anything, based on your experience with law enforcement, that would negatively impact the constitutional rights that [the defendant] is assured or --

A:          Well, I kind of believe that you have to have facts. You have to have some kind of evidence. I believe to be where we're at today, there's something, some kind of evidence. Y'all are building the case and you can't build a case without evidence.

Q:          So, based on your experience, you're familiar with reasonable suspicion and probable cause and those things.

A:          M-hm.

Q:          So, your belief that, just by sitting here today, [the defendant] -- there's some grain of sand that impugns his presumption of innocence?

A:          Yes.

\* \* \*

Q:          And that's just based on your, I guess, your role as law enforcement --

A:          M-hm.

---

[4] Ms. Moser also disclosed she was engaged to Mr. Rhoden. She ultimately served on the jury.

Q:      -- and that's something that, even if you were instructed by the judge to follow the law, that's something that you wouldn't be able to separate?

A:      I don't think so. I mean, like I said, takes a lot of information to build a case, a lot of facts. You're not just going to get here just on somebody saying he raped me.

Q:      So, to you, as [the defendant] sits here today, he's not entirely innocent until proven guilty?

A:      Correct. Yeah.

Q:      So, there's a small degree of guilt just by him sitting here?

A:      Yes.

Defense counsel later challenged Mr. Rhoden for cause based on Mr. Rhoden's opinion the defendant was not presumed innocent until proven guilty. In response, the State noted Mr. Rhoden stated he could follow the law as given and vote not guilty if the State failed to meet its burden of proof. However, the trial court noted its concern was if Mr. Rhoden was selected, he would serve on the same jury as Ms. Moser, who had been accepted as a juror. The trial court found the relationship created a conflict and granted the challenge for cause on that ground.

On appeal, the defendant claims that based on Mr. Rhoden's occupation as a police officer, his comments influenced the other prospective jurors on the panel. He further claims Mr. Rhoden's excusal was not enough to cure the potential jury taint, as he continued to influence the jury through his fiancée who ultimately served on the jury. The defendant contends Mr. Rhoden, Ms. Moser, and the panel members questioned alongside Mr. Rhoden should have all been struck from the jury.

After a thorough review of the record, we find the defendant failed to adequately preserve his claim of jury taint for appellate review. Following Mr. Rhoden's statements, the defendant did not ask the trial court to admonish the jury, move to strike the entire panel, or request further investigation into potential jury

7

taint.[5] Mr. Rhoden made these statements directly in response to questioning by defense counsel, who prodded him about his beliefs in the presence of the other panel members.[6] Moreover, the trial court granted defense counsel's challenge for cause against Mr. Rhoden. With respect to Ms. Moser, the defendant failed to challenge her for cause after examination of the third panel, and he did not use a back strike on Ms. Moser. As for the other potential jurors on the fourth panel, the defendant did not challenge the two members who ultimately served on the jury, one of which was an alternate juror. See *State v. Boyette*, 52,411 (La. App. 2d Cir. 1/16/19), 264 So.3d 625, 642-43 (defendant did not preserve for review issue of potential juror's prejudicial statement and trial court's refusal to remove entire panel who heard statement, where juror was ultimately excused and defendant failed to object to the empaneling of jurors who heard statement).

Thus, the defendant's claim of alleged jury taint is not properly before this court. Accordingly, the defendant's first assignment of error is not reviewable on appeal and/or lacks merit.

## JURY INSTRUCTION

In his second assignment of error, the defendant argues the trial court violated his right to a fair trial by failing to provide a jury instruction on facility dogs in

---

[5] In the conclusion of the defendant's brief, he concedes his trial counsel failed to investigate any possible jury taint, failed to move for a mistrial, and failed to move to quash the improperly drawn jury venire. The defendant seems to raise a claim of ineffective assistance of counsel based on these failures. However, the defendant fails to address the applicable law and relevant jurisprudence in the discussion of this issue. Pursuant to the Uniform Rules of Louisiana Courts of Appeal, Rule 2-12.4(B)(4), all specifications or assignments of error must be briefed, and the appellate court may consider as abandoned any specification or assignment of error that has not been briefed. A mere statement of an assigned error in brief without argument or citation of authority does not constitute briefing. *State v. Trosclair*, 2022-0798 (La. App. 1 Cir. 3/13/23), 2023 WL 2468528, p. *4, writ denied, 2023-00534 (La. 10/17/23), 371 So. 3d 1072. Therefore, this issue is not properly before this court.

[6] We note another potential juror from the fourth panel, Ladriyka Dunn, stated she did not believe the defendant was innocent by virtue of him being on trial. Defense counsel challenged Ms. Dunn for cause, which the trial court granted. Thus, the other person who expressed a similar belief to Mr. Rhoden was also excused from serving on the jury.

contravention of La. R.S. 15:284.[7] Specifically, he argues the facility dog bolstered A.C.'s testimony.

The State filed a notice of intent to use a facility dog pursuant to La. R.S. 15:284 on August 13, 2019, as well as two supplemental notices, one on February 13, 2020, and the other on October 18, 2021. The defendant filed an objection to the notice on the ground the State failed to provide proper documentation regarding the dog's training and certification. Following a hearing, the trial court allowed the State to provide a facility dog to A.C. during her testimony.[8]

Prior to A.C.'s trial testimony, outside the presence of the jury, a facility dog was brought into the courtroom to provide emotional support to A.C. while she testified. The dog remained at A.C.'s feet behind the witness stand, outside the view of the jury. When A.C. finished testifying, the trial court excused the jury for a break, at which point A.C. and the dog exited the witness stand. The trial court noted the dog made four low and short noises during A.C.'s testimony. Defense counsel stated he did not hear any noises from the dog.

Our review of the record reveals the defendant failed to adequately preserve for appellate review his claim that the trial court violated his right to a fair trial by failing to instruct the jury on facility dogs. Before the trial court read its instructions to the jury, it asked defense counsel whether he approved of the final draft. While defense counsel asked for an instruction on sentencing, he did not ask for an instruction on facility dogs pursuant to La. R.S. 15:284(D), and he stated he was satisfied with the proposed instructions. Additionally, counsel did not object to the

---

[7] A facility dog is a dog that is specially trained to provide emotional support to witnesses testifying in judicial proceedings without causing a distraction during the proceedings. La. R.S. 15:284(E). To ensure the presence of a facility dog does not influence the jury or is not a reflection on the truthfulness of any testimony offered by the victim or witness, the trial court shall instruct the jury on the role of the facility dog and that the facility dog is a trained animal. La. R.S. 15:284(D).

[8] According to the minutes of the February 13, 2020 hearing, after ruling that the State would be allowed to use the facility dog, the trial court "ordered added to jury instructions for trial[,]" after which the defendant objected. However, the record does not contain the transcript from the hearing.

trial court's failure to include such an instruction before, during, or after the trial court read the instructions to the jury. Moreover, the State gave the defendant multiple pre-trial notices of its intent to use the facility dog, giving the defendant ample opportunity to object to or request the jury charge. Absent an objection during trial, a defendant may not complain on appeal of an allegedly erroneous jury charge or the failure to give a jury instruction. *State v. Holloway*, 2010-1253 (La. App. 1st Cir. 3/25/11), 2011 WL 1259806, *9 (unpublished), writ denied, 2011-1308 (La. 12/2/11), 76 So.3d 1176; see also La. Code Crim. P. arts. 801(C) and 841(A). Accordingly, this assignment of error is not reviewable on appeal.

## CONSTITUTIONALITY OF LA. R.S. 15:440.5

In his third assignment of error, the defendant contends La. R.S. 15:440.5 is unconstitutional. Specifically, he asserts the statute deprives defendants of their right to prepare and present a defense and to confront their accuser. While the defendant recognizes that in *State v. In re A.M.*, 2008-2493 (La. 11/21/08), 994 So.2d 1277, 1279-80 (per curiam), the Louisiana Supreme Court found that La. R.S. 15:440.5 is not unconstitutional and does not violate a defendant's right to present a defense or right to confrontation, he argues that this Court should reverse that decision.

In La. R.S. 15:440.1, *et seq.*, the Louisiana Legislature declared that protected persons who were the victims of violent crime should not be subjected to more "intrusion" than necessary, so a hearsay exception was created to allow the videotape of an interview conducted with the victim to be presented as evidence at trial when the victim is 17 years of age or younger or has a developmental disability. *State v. Johnson*, 52,128 (La. App. 2d Cir. 8/15/18), 253 So.3d 887, 895. The admissibility of such video statements is set forth in La. R.S. 15:440.5, which provides the conditions under which a protected person's videotaped statement will be admissible, the protections afforded a defendant in regards to his constitutional right

to confront and cross-examine his accuser, and specific restrictions on individuals granted access to the protected person's video statement. *Johnson*, 253 So.3d at 895. The statute stipulates that the video statement is only admissible if the protected person is available to testify. La. R.S. 15:440.5(A)(8). When the State intends to offer as evidence a copy of a videotaped oral statement of a protected person made pursuant to the provisions of La. R.S. 15:440.5, the defendant, through his attorney only, may be provided a copy of the videotape if the court determines it necessary to prepare a proper defense. La. R.S. 15:440.5(C). If the defendant's attorney is provided a copy of the videotaped statement by court order or by permission of the district attorney, **only** the following persons involved in preparing the defense of the instant charges shall be permitted to view the videotape: the attorney and his regularly employed staff, the defendant, the defense investigator designated to work on the case, the defense paralegal designated to work on the case, and other staff members of the attorney who are transcribing the videotaped oral statement. *Id.* (Emphasis added.)

Prior to trial, the defendant filed a motion to allow his expert witness to view A.C.'s forensic interview at the Children's Advocacy Center (CAC) and/or to conduct a "*Taint*/Motion to Suppress Hearing." Therein, he argued an expert witness would help determine whether all procedures and protocols were strictly followed during the interview in order to ensure the reliability of the evidence. The defendant further argued his constitutional right to present a defense under the Sixth Amendment would be violated if his expert was not allowed to view the evidence. The defendant argued in the alternative the trial court should conduct a hearing as to the admissibility of the CAC video. The State opposed the motion, arguing expert witnesses were not included within the list of persons permitted to view the videotape, and further, the statement comported with the requirements of La. R.S. 15:440.5 and should not be suppressed. It appears from the record the trial court

11

denied the defendant's request to allow his expert to view the CAC video, but did conduct a hearing regarding the admissibility of the video at trial, and ruled the video was admissible.[9]

Based upon the clear language of La. R.S. 15:440.5(C), and the Louisiana Supreme Court's holding in *In re A.M.*, 994 So.2d at 1270-80, we find this assignment of error lacks merit.

**PATENT ERROR**

Pursuant to La. Code Crim P. art. 920(2), this court routinely conducts a review of all appeals for error discoverable by mere inspection of the pleadings and proceedings and without inspection of the evidence. *State v. Anthony*, 2023-0117 (La. App. 1st Cir. 11/3/23), 378 So.3d 766, 775, writ denied, 2024-00027 (La. 5/21/24), 385 So.3d 242. Our review has revealed one patent sentencing error.

After the trial court imposed the sentences herein, it advised the defendant he had "two years from today's date to apply for any post conviction relief."[10] (R. 1788). A defendant generally has two years "after the judgment of conviction and sentence has become final" to seek post-conviction relief. La. Code Crim. P. art. 930.8(A). Thus, the trial court failed to adequately advise the defendant of the prescriptive period for seeking post-conviction relief. However, the trial court's failure to properly advise the defendant has no bearing on the sentence and is not grounds to reverse the sentence or remand for resentencing. *State v. LeBoeuf*, 2006-0153 (La. App. 1st Cir. 9/15/06), 943 So.2d 1134, 1142-43, writ denied, 2006-2621

---

[9] The record does not contain the transcripts from the relevant February 13, 2020 and February 27, 2020 hearings.

[10] While the minutes state the trial court properly advised the defendant, the sentencing transcript reflects the trial court did not do so. When there is a discrepancy between the minutes and the transcript, the transcript prevails. *State v. Lynch*, 441 So.2d 732, 734 (La. 1983).

(La. 8/15/07), 961 So.2d 1158. Accordingly, this error is not reversible, and we decline to remand for resentencing.

Out of an abundance of caution and in the interest of judicial economy, we instead advise the defendant that La. Code Crim. P. art. 930.8 generally provides that no application for post-conviction relief, including applications which seek an out-of-time appeal, shall be considered if filed more than two years after the judgment of conviction and sentence have become final under the provisions of La. Code Crim. P. arts. 914 or 922. See *LeBoeuf*, 943 So.2d at 1143.

**CONVICTIONS AND SENTENCES AFFIRMED.**