436 So.2d 471 (1983)
STATE of Louisiana
v.
Melvin SUTTON.
No. 82-KA-0486.
Supreme Court of Louisiana.
June 27, 1983.
*472 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John Craft, Harold J. Gilbert, Jack Peebles, Wm. Campbell, Jr., Asst. Dist. Attys., for plaintiff-appellee.
George A. Blair, III, New Orleans, for defendant.
LEMMON, Justice.
The principal issue in this appeal is whether the evidence was sufficient to support defendant's convictions of the simple robbery of a bank teller and of the armed robbery and second degree murder of a coperpetrator of the bank robbery.[1]
Facts
Thagard Alexander (the alleged coperpetrator who was murdered) walked into the bank at about noon, his tennis hat pulled down over his eyes.[2] He was followed by two men, one of whom had a small child with him. Alexander approached the teller's window, handed her a bag, and told her that the man in line behind him would "blow [her] head off" if she did not put all of her money in the bag. She responded by filling the bag with $12,000 in individually wrapped bundles and by activating the security cameras. After receiving the cash, Alexander quickly walked out of the bank.
To the teller's surprise, the next man in line did not leave with Alexander, but stepped up to the window and attempted to cash a check, while the third man in line, who was accompanied by a small child, turned and followed Alexander from the bank. When the unnerved teller declined to cash the check, the second man also left.
Alexander did not get far with the proceeds of his crime. Less than 20 minutes after the bank robbery, Alexander's body was discovered in a wooded area about a mile from the bank. He was lying face down in tall grass about 20 feet from a public road, having been shot five or six times in the head, chest, and abdomen. The loot from the robbery was gone, and bank wrappers were strewn about the scene. A palm print on one of the torn bank wrappers eventually became the cornerstone of the state's case.
The surveillance photographs showed the two men in line behind Alexander and also showed that the third man left behind Alexander without ever reaching the teller's window. The second man in line was positively identified as Murray Sutton, defendant's brother, by a security guard who worked with Murray Sutton at a plant near the bank. The guard testified that he had seen Murray Sutton and a man with a small child at the plant around noon the day of the robbery. After examining the surveillance photographs, the guard verified that the third person in line (behind Alexander and Murray Sutton) was the same person he had seen at the plant with Murray Sutton. Although the guard could not state positively that defendant was the "man with the child" that he had observed at the plant and in the surveillance photograph, he testified *473 that the man at the plant looked so much like Murray Sutton that he assumed that the man was Murray Sutton's brother.
The teller could not positively identify defendant as the third man in line. Defendant did not present any evidence.
Defendant was indicted for armed robbery of both the bank teller and the murdered robber, as well as for the second degree murder of Alexander.[3] Following a jury trial, he was convicted of simple robbery of the bank teller, armed robbery of Alexander, and second degree murder.[4]
Sufficiency of the Evidence
The state's case against defendant consisted primarily of circumstantial evidence.[5] The testimony of the teller (who was taken to the scene of the shooting) and of the investigating officers undoubtedly established that the bank was robbed of $12,000 in cash by Alexander and that Alexander was himself shot down and relieved of his ill-gotten gains only minutes later.[6] The evidence also undoubtedly established that Murray Sutton and a third man had walked into the bank right behind Alexander, were in line behind Alexander during the robbery, and walked out behind him. However, none of the witnesses positively identified defendant as the "third man" who followed Alexander out of the bank. Nevertheless, a person who resembled defendant was with Murray Sutton at the plant and at the bank a few minutes later. This significant evidence provided a reasonable basis for the jury to draw the inference that defendant was standing in line behind his brother while Alexander perpetrated the bank robbery. Obviously, more than that reasonable inference (that defendant was in the bank) is necessary to uphold defendant's convictions. The significance of the palm print thus assumes a critical role.
A fingerprint expert positively identified the clear palm print lifted from one of the torn wrappers as that of the defendant. The teller identified the torn wrappers, with her initials and teller stamp, as those which were wrapped around the money stolen in the robbery. Moreover, since tellers do not usually dispense money in wrappers and since the only "wrapped money" given out by her on the day of the robbery was the money placed in Alexander's bag, defendant would not have had an opportunity to handle the wrappers except during the few minutes between Alexander's hasty exit from the bank and the discovery of the wrappers near his body. This evidence establishes beyond a reasonable doubt that defendant touched the money wrappers at the approximate time of the murder.
The uncontested facts raise the clear inference that Alexander's killer (or killers) shot him in order to take the large sum of cash. The facts also raise the inference that the killer knew Alexander had money inside the bag, since it is highly unlikely that Alexander happened upon strangers so soon after the robbery and that they killed him and discovered the money by chance. These inferences, together with the palm print indicating defendant's presence at the murder scene and the significant circumstantial evidence indicating that defendant was present in the bank during the robbery, point unmistakably to defendant as the killer (or one of the killers). There simply is no other plausible explanation. Defense *474 counsel hypothesized that someone killed Alexander, leaving his body and the wrappers alongside the road, and that defendant (whose brother was coincidentally standing in line behind the murdered man only minutes before) stumbled upon and handled the wrappers, but that hypothesis is just not plausible.[7]
Thus, the circumstances established by the direct evidence reasonably support the jury's hypothesis (as reflected by their verdict) that defendant was aware beforehand of Alexander's plan to obtain the money from the bank teller by threats and that he and his brother lined up behind Alexander to keep other customers away. This hypothesis is bolstered by a photograph which proved that three people were in line for the teller who was robbed, while each of the adjacent tellers had only one customer at the counter.[8] Further, the fact that the "third man", believed to be defendant, followed Alexander from the bank, without ever reaching the teller's window, provided a basis for the jury to conclude logically that defendant followed Alexander, met him on the road about a mile from the bank, shot him dead, tore the wrappers off the money (thus leaving his palm print), and fled, leaving the police only a dead man to identify as the robber.
Standard of Appellate Review
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the standard enunciated by the United States Supreme Court in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). That standard, which was adopted by the Legislature in enacting La.C.Cr.P. Art. 821 pertaining to postverdict motions for acquittal based on insufficiency of evidence, is that the appellate court, viewing the evidence in the light most favorable to the prosecution, must determine that a rational trier of fact could have concluded that all of the elements of the crime had been proved beyond a reasonable doubt.[9]
The defendant is entitled to have the jurors instructed that the evidence must satisfy them that defendant's guilt has been proved beyond a reasonable doubt and that they must give defendant the benefit of every reasonable doubt arising from the evidence or the lack of evidence. La.C. Cr.P. Art. 804 A. In cases involving circumstantial evidence, the defendant is additionally entitled under the provisions of La. R.S. 15:438 (formerly Article 438 of the 1928 Code of Criminal Procedure) to have the jurors instructed that they must be satisfied that the overall evidence "excludes every reasonable hypothesis of innocence".
Thus, defendant has a statutory right to an instruction that the jurors must conclude that no reasonable hypothesis of innocence exists, as well as a constitutional (and statutory) right to appellate review of the sufficiency of the evidence. An appellate court reviewing the sufficiency of evidence must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstantial evidence must be sufficient for a rational juror to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. As stated by this court in State v. Chism, above, La.R.S. 15:438 "may not establish a stricter standard of *475 review than the more general reasonable juror's reasonable doubt formula, [but] it emphasizes the need for careful observance of the usual standard, and provides a helpful methodology for its implementation in cases which hinge on the evaluation of circumstantial evidence".[10]
In the present case, we conclude that the jurors placed a reasonable construction on the evidence in making their implicit finding that defendant criminally participated in the bank robbery and the subsequent killing of Alexander. The jurors obviously concluded that defendant met and killed his erstwhile confederate to keep Alexander from sharing in the rewards of their crime and left the crucial palm print when he tore the wrappers from the money.
Thus, the evidence supports the jury's finding that defendant was guilty beyond a reasonable doubt of simple robbery as a principal to Alexander's use of threats to commit theft of money by intimidating the teller into surrendering the cash. La.R.S. 14:65. The record also supports the jury's finding that defendant was guilty beyond a reasonable doubt as a principal to the armed robbery and specifically intended killing of Alexander. La.R.S. 14:64 and 14:30.1.
Accordingly, defendant's convictions and sentences are affirmed.
WATSON, J., concurs in the result.
NOTES
[1] Defendant's only other contention lacks any arguable merit and is treated in an unpublished appendix, which is part of the official record in this case.
[2] The victim testified that she paid particular attention to Alexander because she had been the victim of an earlier bank robbery in which the perpetrator wore a tennis hat pulled down over his eyes.
[3] At the time of the offense (May, 1980), second degree murder included a killing in which the offender acted with a specific intent to kill or inflict great bodily harm. La.R.S. 14:30.1, as amended by Act 74 of 1979.
[4] Defendant was sentenced as a multiple offender, based on a previous armed robbery conviction, to seven years for the simple robbery, 50 years for the armed robbery, and life without benefit of probation, parole or suspension of sentence for the second degree murder.
[5] Circumstantial evidence is evidence which, if believed, proves a fact or set of facts from which a juror may logically and reasonably conclude that another fact exists. E. Cleary, McCormick's Handbook of the Law of Evidence § 185 (2d ed. 1972); 1 Louisiana Judges' Benchbook, p. 3.7 (La. Judicial College 1980); see also State v. Chism, 436 So.2d 464 (La. 1983).
[6] The record does not reveal the identity of the person who reported the discovery of Alexander's body to the police 20 minutes after the robbery.
[7] As in State v. Moore, 432 So.2d 209 (La. 1983), defendant presented "no evidence from which any other reasonable hypothesis might be drawn; rather, he chose to rest on his right not to present any evidence...." Moore, above, at 219.
[8] That photograph shows Alexander walking away from the window and Murray Sutton standing at the window, with a third man at the rear of the line holding a child. Another photograph shows the man with the child leaving the bank behind Alexander, with Murray Sutton still at the teller's window.
[9] The Official Revision Comment to Article 821 clearly reveals the legislative intent to adopt the Jackson standard for both trial and appellate court review of sufficiency of evidence to sustain a jury verdict, when that verdict has been challenged by a motion for a post-verdict judgment of acquittal.
[10] The Jackson standard is an objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. As suggested by Judge Anderson in a special concurring opinion in United States v. Bell, 678 F.2d 547, 550 (5th Cir.1982):

"To say that the evidence is sufficient if `a reasonable trier of fact could find that the evidence establishes guilt beyond a reasonable doubt,' is not substantively different from saying that the evidence is sufficient if a reasonable trier of fact could find that the `evidence was inconsistent with every reasonable hypothesis of innocence.' United States v. Marx, 635 F.2d 436, 438 (5th Cir. 1981). It is true that `[i]t is not necessary that the evidence exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt,' but it is equally true that if a hypothesis of innocence is sufficiently reasonable and sufficiently strong, then a reasonable trier of fact must necessarily entertain a reasonable doubt about guilt." (Emphasis supplied)