STONE, J.
hThe defendant, Paul Jacob Norman, II, was charged by bill of information with felony carnal knowledge of a juvenile in violation of La. R.S. 14:80. Following a bench trial, Norman was found guilty as charged and subsequently sentenced to five years at hard labor. For the following reasons, we affirm.
FACTS
On April 17, 2012, Bossier City Police Detective Shawn Poudrier (“Detective Poudrier”) received information from the school resource officer at Rusheon Middle School concerning 13-year-old student, C.S.[1] A family member reported C.S. was involved in a sexual relationship with 26-year-old Paul Jacob Norman, II (“Norman”), who had been living with C.S. and her family. Thereafter, C.S. was interviewed at the Gingerbread House, a children’s advocacy center in Shreveport, Louisiana. In her forensic interview, C.S. denied having a sexual relationship with Norman. However, C.S.’s mother, D.S., admitted to police that she was aware of her daughter’s sexual relationship with Norman. Moreover, C.S.’s cousins, Rhydo-nia Gullette (“Gullette”) and Jessica Pe *99 ters (“Peters”), informed police that they previously witnessed Norman and C.S. having sex.
On May 25, 2012, Norman was charged by bill of information with felony carnal knowledge of a juvenile in violation of La. R.S. 14:80. Norman chose to represent himself at trial and following a two-day bench trial was found guilty as charged. Thereafter, Norman filed a motion for |anew trial arguing that the trial court’s verdict was contrary to the law and evidence because, among other things, he was not permitted to cross-examine Gullette and Peters. Norman also alleged C.S., who testified at trial that she had sex with Norman multiple times, had been coached into testifying against him. Norman’s motion for new trial was denied, and he was sentenced to five years at hard labor. He now appeals.
DISCUSSION

Sufficiency of the Evidence

Norman asserts the evidence adduced at trial was insufficient to prove he had sexual intercourse with C.S.[2] In support of his claim, Norman notes that C.S.’s trial testimony is contrary to the initial statements she made in her Gingerbread House interview. Furthermore, Norman contends none of the state’s witnesses testified that they actually saw him having sexual intercourse with C.S.
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Tate, 2001-1658 (La. 05/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Carter, 42,894 (La. App. 2 Cir. 01/09/08), 974 So.2d 181, writ denied, 2008-0499 (La. 11/14/08), 996 So.2d 1086; State v. Crossley, 48,149 (La. App. 2 Cir. 06/26/13), 117 So.3d 585, writ denied, 2013-1798 (La. 02/14/14), 132 So.3d 410. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, 2005-0477 (La. 02/22/06), 922 So.2d 517; State v. Dotie, 43,819 (La. App. 2 Cir. 01/14/09), 1 So.3d 833, writ denied, 2009-0310 (La. 11/06/09), 21 So.3d 297; State v. Crossley, supra.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La. 1983); State v. Speed, 43,786 (La. App. 2 Cir. 01/14/09), 2 So.3d 582, writ denied, 2009-0372 (La. 11/06/09), 21 So.3d 299; State v. Crossley, supra.
In the absence of internal contradiction or irreconcilable conflict with physical evidence,, one witness’s testimony, if believed by the trier of fact, is sufficient *100 support for a requisite factual conclusion. State v. Wiltcher, 41,981 (La. App. 2 Cir. 05/09/07), 956 So.2d 769; State v. Burd, 40,480 (La. App. 2 Cir. 01/27/06), 921 So.2d 219, writ denied, 2006-1083 (La. 11/09/06), 941 So.2d 35. Likewise, the sole testimony of a sexual assault victim is sufficient to support a requisite factual finding. State v. Lewis, 50,546 (La. App. 2 Cir. 05/04/16), 195 So,3d 495, 499; State v. Demery, 49,732 (La. App. 2 Cir. 05/20/15), 165 So.3d 1176. Such testimony alone is sufficient even where the state does not introduce medical, scientific, or physical evidence to prove the .commission of. the offense by the defendant. State v. Ponsell, 33,543 (La. App. 2 Cir. 08/23/00), 766 So.2d 678.
Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. Allen, 36,180 (La. App. 2 Cir. 09/18/02), 828 So.2d 622, writs denied, 2002-2595 (La. 03/28/03), 840 So.2d 566, 2002-2997 (La. 06/27/03), 847 So.2d 1255, cert. denied, 540 U.S. 1185, 124 S.Ct. 1404, 158 L.Ed.2d 90 (2004). The appellate court neither assesses the credibility of witnesses nor . reweighs evidence. State v. Smith, 94-3116 (La. 10/16/95), 661 So.2d 442, A reviewing court accords great deference to a jury’s decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La. App. 2 Cir. 08/30/02), 827 So.2d 508, writ denied, 2002-3090 (La. 11/14/03), 858 So.2d 422.
La. R.S. 14:80 provides in pertinent part that:
A Felony carnal knowledge of a juve- ■ nile is committed when:'
(1) A person who is seventeen years of age or older has sexual intercourse, with consent, with a person who is thirteen years of age or older but less than seventeen years of age, when the victim is not the spouse of the offender, and when the difference between the age of the victim and the age of the offender is four years or greater; or
. ⅜ ⅜ ⅜
■ B. As used in this Section, “sexual intercourse” means anal, oral, or vaginal sexual intercourse.
|BC. 'Láck of knowledge of the juvenile’s age shall not be a defense. Emission is not necessary, and penetration, howevér slight, is sufficient to complete ; the crime.
. At trial, Detective Poudrier testified he interviewed Gullette and her sister, Peters, who stated they saw Norman and C.S. having sex at C.S.’s house. Norman did not object to Detective Poudrier’s reference to either Gullette’s or Peters’ statement. On cross-examination, Norman requested that Detective Poudrier’s recorded interviews with Gullette and Peters be played in open court. In her interview, Gullette stated she was at C.S.’s hoüse for a cookout when she and Peters went around the outside of the house to knock on'C.S.’s bedroom window as a prank. Gullette said that before she knocked, she looked inside and saw Norman and C.S. having sex. Gullette and Peters immediately went inside the house and confronted C.S. and Norman. According to Gullette, Norman responded that “he was a grown man and could do what he wanted.” Gullette did riot actually see C.S. and Norman having sexual intercourse, but stated they were under the bed covers, C.S. did not appear to be wearing pants, and Norman’s pants were pulled down.
In her interview, Peters stated she and Gullette walked around C.S.’s house to knock.on her bedroom, window while they *101 were at C.S.’s house for a cookout, Peters told Detective Poudrier that Gullette saw C.S. and Norman having sex through C.S.’s bedroom window, but that she did not. Peters said that she and Gullette told D.S. what Gullette had seen, but D.S. told them to leave C.S. and Norman alone, Gullette and Peters then went inside the house and Gullette told Norman that he needed to “put his thing away.” C.S. and Norman both responded by saying that they were grown and could do what they wanted. Two days later, D.S., C.S., and Norman | (¡stayed with Peters at her home. Peters stated she saw Norman grab C.S.’s crotch, butt, and breasts. C.S. also told Peters that she had sex with Norman the evening before.
Bossier City Police Detective Karen McDonald (“Detective McDonald”) testified that she interviewed D.S. According to Detective McDonald, D.S. admitted that she allowed Norman to move into her house when he was having family , problems. D.S. further acknowledged that she knew Norman and C.S. were having sex. D.S. stated C.S. would throw a fit and threaten to run away when she attempted to get Norman to leave the house. On cross-examination, Norman requested that D.S.’s recorded interview be played for the court. In the interview, D.S. stated Norman began coming over to D.S.’s house and spending a lot of time with C.S. D.S. explained that she once caught Norman in bed on top of C.S., and upon seeing D.S., Norman immediately jumped out of the bed with his pants around his ankles. At trial, D.S. testified that after C.S. admitted she was having sex with Norman, she took C.S. to a healthcare provider to get her birth control shots. D.S. asserted she never reported Norman’s inappropriate behavior with C.S.[3]
c.S., 17 years old at trial, testified she dated Norman for almost a year before his arrest. C.S. stated she and Norman had vaginal sexual intercourse more than ten times. C.S. further admitted that she lied to the forensic interviewer at the Gingerbread House about not having sex with Norman in order to protect him. On cross-examination, C.S. confirmed that Gullette I T-and Peters looked into her window when she was having sex with Norman. At Norman’s request, C.S.’s Gingerbread House interview was played for the trial court. During the interview, C.S. denied multiple times that anything sexual occurred with Norman, and claimed Norman never slept or laid in her bed.
When viewed in a light most favorable to the prosecution, the state presented sufficient evidence to prove Norman committed felony carnal knowledge of a juvenile. At the time of the sexual encounters, Norman was 26 years old and C.S. was 13 years old. C.S. testified that she and Norman had vaginal sexual intercourse “more than ten” times, and her testimony alone is sufficient to prove the essential elements of the crime. Lewis, supra. While C.S. initially denied having sex with Norman, her trial testimony admitting her sexual relationship with Norman is corroborated by the testimony of her mother, D.S., as well as the testimony of her cousins, Gul-lette and Peters. It is not the duty of this court to assess C.S.’s credibility or reweigh the evidence presented at trial. As a result, we find the record is sufficient to sustain Norman’s conviction.

Motion for Continuance

After the first day of trial, and following Detective Poudrier’s testimony *102 and the admission of Gullette’s and Peters’ statements, Norman noted his desire to subpoena Gullette and Peters because the state was not presenting them as witnesses. The state had no objection to Norman’s request, and the trial court issued instanter subpoenas for both Gullette and Peters. The next morning, Detective Poud-rier testified the police were unable to locate either Gullette or Peters, and the trial court concluded that “a good faith effort was made to secure the presence of these individuals at |strial.” Thereafter, Norman requested a continuance to attempt to personally locate the witnesses. However, the trial court denied Norman’s motion for a continuance, explaining he should have subpoenaed Gullette and Peters before trial to secure their presence.
Norman now argues that he was denied his right to cross-examine his accusers when Detective Poudrier testified regarding statements he received from Gullette and Peters. Norman asserts Gullette and Peters did not comply with the state’s subpoenas to testify at trial, and he was forced to play the women’s recorded statements to show the inconsistencies in their statements.
The Confrontation Clause of the Sixth Amendment provides that in “all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him,” and limits the admission of testimonial hearsay statements at criminal trials to situations when the declarant is unavailable to testify and the defendant has had a prior opportunity to cross-examine the declarant. Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).
Confrontation errors are subject to a harmless error analysis. See Delaware v. Van Arsdall, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); State v. Robinson, 01-0273 (La. 05/17/02), 817 So.2d 1131; State v. Cope, 48,739 (La. App. 2 Cir. 04/09/14), 137 So.3d 151, writ denied, 14-1008 (La. 12/08/14), 153 So.3d 440 (“The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.”). Furthermore, an irregularity or error cannot ]abe availed of after verdict unless it was objected to at the time of occurrence. La. C. Cr. P. art. 841.
Detective Poudrier’s testimony regarding the content of Gullette’s and Peters’ out-of-court statements violated Norman’s confrontation rights because the statements were testimonial in nature and neither woman was available for cross-examination. Nonetheless, any such confrontation error was undoubtedly harmless, because the remaining evidence presented by the state, including the trial testimony of C.S. and D.S., was sufficient to prove Norman’s guilt. Moreover, Norman failed to contemporaneously object to Detective Poudrier’s testimony regarding Gullette’s and Peters’ out-of-court statements, and in fact, chose to seek admission of both women’s recorded statements. La. C. Cr. P. art. 841. Based on Gullette’s and Peters’ recorded statements, cross-examination of either woman would not have been particularly helpful to Norman, because their statements were largely consistent and only differed in minor respects. Consequently, we find no error in the trial court denying Norman’s motion for continuance.
ERRORS PATENT
Our review of the record reveals two errors patent. First, the trial court failed to sufficiently advise Norman of the time within which to apply for post-conviction relief pursuant to La. C. Cr. P. art. 930.8. *103 The correct time period for Norman to seek post-conviction relief is two years from the date his conviction and sentence become final. We hereby advise Norman that he has two years from the date his conviction and sentence become final to apply for post-conviction relief.
Secondly, Norman’s conviction of felony carnal knowledge of a juvenile, a “sex offense” under La. R.S. 15:541(24), requires that Norman be |insubjected to the sex offender notification and registration requirements. See La. R.S. 15:542. Although the trial court verbally advised Norman at sentencing that upon his release he would be required to register as a sex offender for “fifteen years on supervision,” the record does not indicate that the court complied with the written notification procedure outlined in La. R.S. 15:543. Because Norman was verbally notified of the requirements, remand is unnecessary. However, the trial court is directed to provide the appropriate written notice of the sex offender registration requirements to Norman within ten days of the rendition of this opinion, and to file written proof of Norman’s receipt of such notice in the record of the proceedings. La. R.S. 15:543(A); State v. Sule, 50,774 (La. App. 2 Cir. 08/10/16), 200 So.3d 396, 400, 268; State v. Diggs, 43,740 (La.App. 2 Cir. 12/10/08), 1 So.3d 673, writ denied, 09-0141 (La. 10/02/09), 18 So.3d 101.
CONCLUSION
For the foregoing reasons, Norman’s conviction and sentence are affirmed. By this opinion, the trial court is hereby instructed to provide Norman with the appropriate written notice of the sex offender registration requirements within 10 days of the rendition of this opinion and to file written proof of his receipt thereof in the record.
AFFIRMED WITH INSTRUCTIONS.
APPLICATION FOR REHEARING
Before BROWN, WILLIAMS, DREW, STONE and BLEICH, JJ.
Rehearing denied.

. In accordance with La. R.S. 46:1844(W), the victim and her mother will be identified by their initials only.

. At trial, Detective Poudrier testified that Norman's date of birth is June 2, 1985, and C.S.’s date of birth is April 29, 1998. Norman does not dispute their ages, or that he and C.S. were not married.

. D.S. pled guilty to the crime of contributing to the delinquency of a minor. At trial, D.S. testified that she was not obligated pursuant to a plea agreement to testify at Norman’s trial.