Judgment rendered January 10, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 55,376-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                          Appellee

versus

LADARIUS R. TORBOR                          Appellant

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Lincoln, Louisiana
Trial Court No. 76,613

Honorable Bruce Edward Hampton, Judge

* * * * *

LOUSIANA APPELLATE PROJECT          Counsel for Appellant
By: Peggy J. Sullivan

LADARIUS R. TORBOR                   Pro Se

JOHN FITZGERALD BELTON               Counsel for Appellee
District Attorney

LEWIS ALLEN JONES
TRACY WAYNE HOUCK
Assistant District Attorneys

* * * * *

Before STONE, STEPHENS, and HUNTER, JJ.

**HUNTER, J**.

Defendant, LaDarius R. Torbor, was charged by bill of information with violating the Peeping Tom statute, La. R.S. 14284, third offense. Following a trial, a unanimous jury found him guilty as charged. Subsequently, defendant pled guilty to being a fourth-felony offender, and pursuant to a plea agreement, he was sentenced to 20 years' imprisonment at hard labor. For the following reasons, we affirm.

## FACTS

On January 10, 2022, at approximately 11:28 p.m., the Ruston Police Department received reports in reference to a person peeping through the windows of residences. One caller, Maria Woods-Andrews, informed the dispatcher she saw someone looking into the window of her mother's residence. [1] Police officers were dispatched to the residence and encountered defendant, LaDarius Torbor, wearing the clothing described by Woods-Andrews. Defendant told the officers he had been running from "some people" who were chasing him.

Some of defendant's actions were captured by the Ring doorbell camera of Woods-Andrews' mother. The video depicted defendant approaching the residence, squatting down with his pants partially pulled down with his right hand inside the front of his pants. The camera also showed defendant approaching the kitchen window of the residence; however, defendant walked outside the view of the camera and was not seen actually looking into the window.

---

[1] The police officers noted Woods-Andrews' complaint was the third complaint made that night concerning defendant peeping into windows in the area.

Defendant waived his right to counsel and proceeded to represent himself with standby counsel. The State introduced as evidence two prior Peeping Tom convictions, and Woods-Andrews and Officer Joshua Aldridge testified regarding the events which occurred on the night of January 10, 2022.

Defendant was found guilty, as charged, of violating the Peeping Tom statute, third offense. He subsequently pled guilty to being a fourth-felony offender. Pursuant to a plea agreement, defendant agreed he would receive the minimum sentence of 20 years, and he was sentenced to 20 years at hard labor in accordance with the plea agreement.

Defendant appeals.

## DISCUSSION

Defendant contends the evidence was insufficient to prove he is guilty of violating the Peeping Tom Statute. He argues the State did not introduce any physical evidence, such as fingerprints, DNA, or video footage, to prove he peeped through the window at the residence of Woods-Andrews' mother. Defendant maintains the entire case "hinges on Maria Woods-Andrews' testimony she saw [defendant] peeping through the kitchen window." According to defendant, Woods-Andrews' testimony was inconsistent because she initially stated she saw "somebody" at the window, but she later definitively identified defendant as the person she saw. Defendant asserts "it is not possible for [Woods-Andrews] to know whether he had been walking past the window when he saw her and froze." He could have merely glanced into the window because Woods-Andrews only observed defendant for a brief moment before she turned and ran, and the State did not make any attempt to establish why defendant was at the window. Consequently,

defendant maintains the testimony was insufficient to establish defendant was near the house "for the purpose of spying upon or invading the privacy of persons spied upon[.]"

In a *pro se* brief, defendant contends the evidence was insufficient to prove, beyond a reasonable doubt, he peeped through a window. He argues Woods-Andrews, the district attorney, and the jury believe he committed this offense due to his prior violations of the Peeping Tom statute. He also asserts the State failed to prove he "peeped" into the window, and he did so "for the purpose of spying."

When a defendant challenges both the sufficiency of the evidence to convict and one or more trial errors, the reviewing court first reviews sufficiency, as a failure to satisfy the sufficiency standard will moot the trial errors. *State v. Hearold*, 603 So. 2d 731 (La. 1992); *State v. Patterson*, 50,305 (La. App. 2 Cir. 11/18/15), 184 So. 3d 739, *writ denied*, 15-2333 (La. 3/24/16), 190 So. 3d 1190.

The standard of appellate review for a sufficiency of the evidence claim in a criminal case is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004). This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Pigford*, 05-0477 (La. 2/22/06),

922 So. 2d 517; *State v. Burch*, 52,247 (La. App. 2 Cir. 11/14/18), 259 So. 3d 1190.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Norman*, 51,258 (La. App. 2 Cir. 5/17/17), 222 So. 3d 96, *writ denied*, 17-1152 (La. 4/20/18), 240 So. 3d 926.

The appellate court does not assess the credibility of witnesses or reweigh evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Walker*, 51,217 (La. App. 2 Cir. 5/17/17), 221 So. 3d 951, *writ denied*, 17-1101 (La. 6/1/18), 243 So. 3d 1064. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weights of the evidence, not its sufficiency. *State v. Ward*, 50,872 (La. App. 2 Cir. 11/16/16), 209 So. 3d 228, *writ denied*, 17-0164 (La. 9/22/17), 227 So. 3d 827.

In the absence of internal contradiction or irreconcilable conflict with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient support for a requisite factual conclusion. *State v. Hust*, 51,015 (La. App. 2 Cir. 1/11/17), 214 So. 3d 174, *writ denied*, 17-0352 (La.

11/17/17), 229 So. 3d 928. The trier of fact is charged to make a credibility evaluation and may, within the bounds of rationality, accept or reject the testimony of any witness; the reviewing court may impinge on that discretion only to the extent necessary to guarantee the fundamental due process of law. *State v. Sosa*, 05-0213 (La. 1/19/06), 921 So. 2d 94; *State v. Hust*, *supra*. A reviewing court accords great deference to a fact finder's decision to accept or reject the testimony of a witness in whole or in part. *State v. Brown*, 51,352 (La. App. 2 Cir. 5/2/17), 223 So. 3d 88, *writ denied*, 17-1154 (La. 5/11/18), 241 So. 3d 1013.

La. R.S. 14:284 provides, in relevant part:

A. No person shall perform such acts as will make him a "Peeping Tom" on or about the premises of another, or go upon the premises of another for the purpose of becoming a "Peeping Tom."

B. "Peeping Tom" as used in this Section means one who peeps through windows or doors, or other like places, situated on or about the premises of another *** for the purpose of spying upon or invading the privacy of persons spied upon without the consent of the persons spied upon. It is not a necessary element of this offense that the "Peeping Tom" be upon the premises of the person being spied upon.
***

In the absence of a qualifying statutory provision, the terms "intent" and "intentional" in criminal statutes have reference to general criminal intent. La. R.S. 14:11; *State v. Godeaux*, 378 So. 2d 941 (La. 1980); *State v. Copeland*, 52,742 (La. App. 2 Cir. 9/25/19), 280 So. 3d 848, *writ denied*, 19-01646 (La. 9/27/21), 324 So. 3d 89. General intent exists when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his acts or failure to act. La. R.S. 14:10. In

a general criminal intent crime, the very doing of the acts, which have been declared criminal, shows criminal intent, which is necessary to sustain a conviction. *State v. Holmes*, 388 So. 2d 722 (La. 1980); *State v. Copeland*, *supra*.

In the instant case, Maria Woods-Andrews testified she was leaving her mother's home at approximately 11:00 p.m., and as she was exiting the residence, she saw a person standing at the window of the house. She ran back inside the house, told her mother to call the police, and watched as the person entered a gray vehicle. While on the telephone with dispatch, Woods-Andrews saw the person walking back towards her mother's house. Woods-Andrews identified defendant, LaDarius Tobor, as the person she saw looking into her mother's window. She recognized him because she had known him "his entire life" because his family lived in close proximity to her mother's house. Woods-Andrews watched as defendant walked to the house across the street, stood in front of a window, then reclined under the carport. The video footage obtained from the Ring doorbell camera was played for the jury during Woods-Andrews' testimony.

The jury also heard testimony from Beatrice Woods, who testified she did not see defendant peeping into her window. However, she stated her daughter, Woods-Andrews, came back inside the house that night and stated "someone was on the porch looking in the window." She also testified no one gave defendant permission to look into her window.

Our review of the record reveals there was sufficient evidence to support the jury's finding defendant guilty of violating the Peeping Tom statute. The jury, as fact finder, weighed the credibility of the state's witnesses, and the verdict suggests the jury found the witnesses credible.

The testimony reveals defendant was standing in the victim's yard looking into her window. The length of time defendant looked into the window is of no moment. Defendant's general intent to invade the privacy of the victims can be inferred from his actions, *i.e.*, standing in in the victim's yard and looking into her window at 11:00 p.m. Based on this record, we find the evidence was sufficient to support the jury's verdict. This assignment lacks merit.

Defendant also contends the trial court failed to properly arraign him on the charge of Peeping Tom, third offense. He argues the bill of information was not read in open court. He asserts he appeared for arraignment, waived his right to counsel, and elected to represent himself. According to defendant, he did not waive formal arraignment or the reading of the bill of information, and he was not informed of the nature of the allegations in the bill of information. He maintains he knew he had been charged with violating the Peeping Tom statute; however, he did not know the specific address of the house where the alleged offense occurred. Defendant asserts he was in no position to subpoena the appropriate witnesses or prepare for cross-examination of witnesses, and was, therefore, prejudiced by the failure to properly arraign him.

The purpose of an arraignment is to inform the defendant of the substance of the crime he is charged with. *State v. Montero*, 18-397 (La. App. 5 Cir. 12/19/18), 263 So. 3d 899. La. C. Cr. P. art. 551 provides:

> A. The arraignment consists of the reading of the indictment to the defendant by the clerk in open court, and the court calling upon the defendant to plead. Reading of the indictment may be waived by the defendant at the discretion and with the permission of the court. The arraignment and the defendant's plea shall be entered in the minutes of the court and shall constitute a part of the record.

7

B. The court may, by local rule, provide for the defendant's appearance at the arraignment and the entry of his plea by way of simultaneous transmission through audio-visual electronic equipment.

La. C. Cr. P. art. 555 provides:

Any irregularity in the arraignment, including a failure to read the indictment, is waived if the defendant pleads to the indictment without objecting thereto. A failure to arraign the defendant or the fact that he did not plead, is waived if the defendant enters upon the trial without objecting thereto, and it shall be considered as if he had pleaded not guilty.

The record demonstrates defendant appeared via video for arraignment on February 16, 2022. The colloquy was as follows:

*** 

| | |
|---|---|
| THE COURT: | Mr. Torbor, you need to understand that in addition to the two charges of Peeping Tom, which are both felonies, if you're convicted of either one of those, the State is going to pursue you as a Habitual Offender which means at least a minimum twenty-year sentence and I believe that would be without benefit of parole, probation, or suspension of sentence. If you're gonna represent yourself you need to be – well, you just need to understand that you'll be representing yourself and you risk going to jail for at least twenty years. And I – I would advise you that that is a very foolish proposition on your behalf. |

*** 

| | |
|---|---|
| THE COURT: | All right. You're charged as a Peeping Tom which is found in Louisiana Criminal Code under Miscellaneous Crimes under Article 284. It says, "Peeping Tom as used in this Section means one who peeped through windows or doors or other like places situated on or about the premises of another or uses an unmanned aircraft system for the purpose of spying upon or invading the privacy of persons spied upon without the consent of the person spied upon. It is not a necessary element of this offense that the |

8

|  | Peeping Tom be upon the premises of the person being spied upon." |
| --- | --- |
|  | *** |
| THE COURT: | On the charge of Peeping Tom – two counts of Peeping Tom, how do you wish to plead? |
| [DEFENDANT]: | I'd like to plead Not Guilty, Your Honor. |
|  | *** |

We find no reversible error in defendant's arraignment. The record demonstrates the trial court informed defendant of the charges against him by reading the Peeping Tom statute and the potential penalties he would face if convicted and subsequently adjudicated a habitual offender. The court also called upon defendant to enter a plea, and defendant entered a plea of "not guilty." Further, the record reflects defendant proceeded to trial without raising any objections regarding any irregularities in the arraignment or plea. This assignment lacks merit.

In a *pro se* assignment of error, defendant contends the 20-year sentence is excessive and makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. *State v. Lobato*, 603 So. 2d 739 (La. 1992). Nevertheless, he concedes he agreed to a minimum sentence of 20 years as a habitual offender. La. C. Cr. P. art. 881.2(A)(2) precludes a defendant from appealing a sentence imposed in conformity with a plea agreement which was set forth in the record at the time of his plea. *State v. Young*, 96-0195 (La. 10/15/96), 680 So. 2d 1171. Here, the record reflects after being advised of his constitutional rights, defendant waived his rights and pled guilty to the habitual offender adjudication. Further, the plea agreement included a sentence of 20 years at hard labor, and defendant was informed by the trial

9

court he was waiving his right to appeal the habitual offender adjudication and sentence.  Defendant was ultimately sentenced to the agreed-upon sentence of 20 years. Thus, pursuant to *Young*, *supra*, defendant is barred from appealing his sentence, which was imposed in conformity with a plea agreement set forth in the record at the time of the plea.

## CONCLUSION

For the reasons set forth herein, defendant's conviction and sentence are affirmed.

**CONVICTION AFFIRMED; SENTENCE AFFIRMED.**