Judgment rendered April 9, 2025.
Application for rehearing may be filed
within the delay allowed by Art. 922,
La. C. Cr. P.

No. 56,189-KA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

STATE OF LOUISIANA                                    Plaintiff-Appellee

versus

ALONZO D. RAGSDALE                                    Defendant-Appellant

* * * * *

Appealed from the
Forty-Second Judicial District Court for the
Parish of DeSoto, Louisiana
Trial Court No. 22-CR-32541

Honorable Amy Burford McCartney, Judge

* * * * *

LOUISIANA APPELLATE PROJECT              Counsel for
By: Annette Fuller Roach                        Defendant-Appellant

CHARLES BLAYLOCK ADAMS                   Counsel for
District Attorney                               Plaintiff-Appellee

EDWIN L. BLEWER, III
RHYS E. BURGESS
ETHAN ARBUCKLE
Assistant District Attorneys

* * * * *

Before STEPHENS, HUNTER, and ELLENDER, JJ.

STEPHENS, J., dissents with written reasons.

**HUNTER, J.**

Defendant, Alonzo D. Ragsdale, was charged by bill of information with possession of a Schedule II controlled dangerous substance (methamphetamine), more than two grams but less than 28 grams, in violation of La. R.S. 40:967(C)(2), possession of a firearm or carrying a concealed weapon by a convicted felon, in violation of La. R.S. 14:95.1, and aggravated flight from an officer, in violation of La. R.S. 14:108.1(C). Following a jury trial, defendant was found guilty of aggravated flight from an officer; he was acquitted of the other charges. He was adjudicated a second-felony offender and was sentenced to serve eight years at hard labor, without the benefit or probation or suspension of sentence. For the following reasons, we affirm.

## FACTS

On April 23, 2022, a party was held at a private residence in DeSoto Parish. Sgt. Gregory Perry, Sr., an off-duty deputy with the DeSoto Parish Sheriff's Office ("DPSO"), was a guest at the event. During the course of the evening, an argument arose between one male and several female attendees. Within minutes of his arrival, Sgt. Perry heard a commotion and noticed a crowd of people arguing in the roadway. The argument escalated, and Sgt. Perry called the DPSO to request officers to dispel any possible trouble; he reported that "a guy from Shreveport [was] making threats toward people." He was able to provide a description of the vehicle (a tan or beige Hyundai Sonata) and the license plate number.

Deputy Jacob Sullivan responded to the call, and as he neared the residence, dispatch advised him the person was leaving the area and provided him with the description of the vehicle. Deputy Sullivan observed

a vehicle matching the description leaving the neighborhood; he executed a U-turn and followed the vehicle. As Deputy Sullivan began following the vehicle, the driver increased his speed, reaching a speed of more than 100 miles per hour in a 55 mile per hour zone. During the pursuit, the deputy observed the vehicle leaving its lane of travel, passing in a no-passing zone, and driving against the flow of traffic. The vehicle left the roadway, struck an object on the side of the road, went airborne, and collided with a vehicle sitting at a drive-thru window at a liquor store. The vehicle ultimately landed on the pavement at the edge of the roadway.

While the vehicle was airborne, Deputy Sullivan advised dispatch he had observed a person "fly out" of the driver's side of the vehicle. Deputy Sullivan approached the vehicle within seconds of its landing, and he saw defendant, Alonzo D. Ragsdale, sitting in the passenger seat. The deputy also noticed the driver's side window was down. He asked defendant who was driving the vehicle, and defendant stated another person was driving. Deputy Sullivan looked for any other person who may have been in the vehicle. However, he was unable to locate anyone else.

Law enforcement officers and emergency personnel searched the area but were unable to find the person believed to have been ejected from the vehicle. Deputy Sullivan told the investigating state trooper, "I swear I saw two people." However, after he watched the dash camera video, he stated he was mistaken about a person being ejected from the vehicle.[1]

Deputy Charla McLeod, a DPSO patrol deputy, also responded to the call regarding the disturbance at the party. As she was enroute to the party,

---

[1] The dash camera video footage of the incident was shown at trial.

2

she heard Deputy Sullivan inform dispatch that he was in pursuit of the vehicle. As Deputy McLeod neared the area, Deputy Sullivan radioed that the vehicle had crashed, and he believed someone had been ejected from the vehicle and/or had left the scene. Deputy McLeod stated she arrived on the scene immediately after the crash and began searching the area; other officers joined the search as they arrived. She testified they did not find any blood, or other evidence to suggest someone had been ejected from the vehicle. She admitted blood drops could have been overlooked because the area was dark and wooded. Deputy McLeod also testified she went to the crashed vehicle and saw a male sitting in the passenger seat. She stated she did not observe a broken window, and she could not recall whether the window was up or down.

Defendant was charged by bill of information with possession of a Schedule II controlled dangerous substance (methamphetamine), more than two grams but less than 28 grams, in violation of La. R.S. 40:967(C)(2), possession of a firearm or carrying a concealed weapon by a convicted felon, in violation of La. R.S. 14:95.1, and aggravated flight from an officer, in violation of La. R.S. 14:108.1(C). Following a jury trial, defendant was found guilty as charged of aggravated flight from an officer; he was acquitted of the drug and firearm charges. He was adjudicated a second-felony offender and was sentenced to serve eight years at hard labor, without the benefit or probation or suspension of sentence.

Defendant appeals.

**DISCUSSION**

Defendant contends the evidence was insufficient to support his conviction for aggravated flight from an officer. He argues the State failed to prove, beyond a reasonable doubt, he was the person operating the vehicle at the time of the pursuit. He argues no witness testified they saw defendant operating the vehicle, and Sgt. Perry could not identify defendant as the person involved in the disturbance at the party, he did not see the person leaving the party, and he did not know who was in the car or who was driving it. Additionally, Sgt. Sullivan did not see the vehicle leaving the party; he encountered a beige car, with what he believed to be two occupants, and he began pursuing it. He also testified he approached the vehicle within seconds of the incident, and defendant was seated in the passenger seat. Furthermore, Deputy Sullivan initially stated he believed someone had been ejected from the vehicle at the time it flipped. The State advanced a mere theory that defendant must have been tossed around inside the vehicle and landed in the passenger seat. However, none of the evidence supports that theory. Further, the surrounding area was searched for the unidentified person; however, sufficient time had elapsed for someone to leave the area either on foot or in one of the several vehicles passing in the area minutes after the car crash.

Defendant also contends the elements of aggravated flight were not satisfied because the State failed to prove the officer had reasonable grounds to believe the driver of the vehicle had committed an offense. Sgt. Perry testified he did not witness a crime being committed, but he called 9-1-1 to dispel any potential trouble.

4

The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the case in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *State v. Tate*, 01-1658 (La. 5/20/03), 851 So. 2d 921, *cert. denied*, 541 U.S. 905, 124 S. Ct. 1604, 158 L. Ed. 2d 248 (2004); *State v. Steines*, 51,698 (La. App. 2 Cir. 11/15/17), 245 So. 3d 224. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. *State v. Steines*, *supra*.

The *Jackson* standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from circumstantial evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. *State v. Sutton*, 436 So. 2d 471 (La. 1983); *State v. Norman*, 51,258 (La. App. 2 Cir. 5/17/17), 222 So. 3d 96, *writ denied*, 17-1152 (La. 4/20/18), 240 So. 3d 926.

Direct evidence provides proof of the existence of a fact; for example, a witness's testimony that he saw or heard something. *State v. Lilly*, 468 So. 2d 1154 (La. 1985); *State v. Baker*, 49,175 (La. App. 2 Cir. 8/27/14), 148 So. 3d 217. Circumstantial evidence consists of proof of collateral facts and

5

circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Broome*, 49,004 (La. App. 2 Cir. 4/9/14), 136 So. 3d 979, *writ denied*, 14-0990 (La. 1/16/15), 157 So. 3d 1127.

For a case resting essentially upon circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. La. R.S. 15:438; *State v. Christopher*, 50,943 (La. App. 2 Cir. 11/16/16), 209 So. 3d 255, *writ denied*, 16-2187 (La. 9/6/17), 224 So. 3d 985. The appellate court reviews the evidence in the light most favorable to the prosecution and determines whether an alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. *State v. Calloway*, 07-2306 (La. 1/21/09), 1 So. 3d 417; *State v. Alexander*, 53,449, p. 5 (La. App. 2 Cir. 11/18/20), 306 So. 3d 594, 598, *writ denied*, 20-01449 (La. 6/22/22), 339 So. 3d 642; *State v. Garner*, 45,474 (La. App. 2 Cir. 8/18/10), 47 So. 3d 584.

The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. *State v. Casey*, 99-0023 (La. 1/26/00), 775 So. 2d 1022, *cert. denied*, 531 U.S. 840, 121 S. Ct. 104, 148 L. Ed. 2d 62 (2000). The appellate court does not assess the credibility of witnesses or reweigh the evidence. *State v. Smith*, 94-3116 (La. 10/16/95), 661 So. 2d 442; *State v. Steines, supra.* A reviewing court affords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. *State v. Copeland*, 52,742 (La. App. 2 Cir. 9/25/19), 280 So. 3d 848, *writ denied*, 19-01646 (La. 9/27/21), 324 So. 3d 89.

6

Aggravated flight from an officer is the intentional refusal of a driver to bring a vehicle to a stop, under circumstances wherein human life is endangered, knowing that he has been given a visual and audible signal to stop by a police officer when the officer has reasonable grounds to believe that the driver or operator has committed an offense. La. R.S. 14:108.1(C). Circumstances wherein human life is endangered shall be any situation where the operator of the fleeing vehicle commits at least two of the following acts:

> (1) Leaves the roadway or forces another vehicle to leave the roadway.
> (2) Collides with another vehicle or watercraft.
> (3) Exceeds the posted speed limit by at least twenty-five miles per hour.
> (4) Travels against the flow of traffic[;]
> ***

La. R.S. 14:108.1(D).

In the instant case, although there were no eyewitnesses positively identifying defendant as the driver of the vehicle, the State presented testimony from witnesses who observed the verbal altercation at the party, the high-speed chase, and the aftermath thereof. Sgt. Perry testified he witnessed an argument between multiple individuals at the party, and the dispute "kept escalating." He heard "threats going back and forth," so he called the DPSO and reported, "There's a guy from Shreveport making threats toward people." Sgt. Perry provided dispatch with a description of the vehicle and the license plate number.

Deputy Sullivan testified he received a call from dispatch and was "advised that there was a black male causing a disturbance or some sort of altercation was ensuing at the location." He stated he was later advised the

7

person was leaving the residence driving a 2010 tan or beige Hyundai Sonata. He testified he attempted to conduct a traffic stop because he believed a crime had occurred at the residence where the party was held. While Deputy Sullivan was pursuing the vehicle, the driver crossed into the opposite lane of traffic, passed in a no passing zone, continuously drove in the opposing lane of traffic, and exceeded 100 miles per hour. Deputy Sullivan also testified the vehicle struck something, and "did a 360 in the air." He further stated he saw "something fly out of the vehicle. I do not know if it was debris, an object in the vehicle. At the time, I believed it to be a person." Ultimately, the vehicle struck another vehicle and landed a short distance away. Deputy Sullivan stated he had a clear sight of the vehicle at all times and did not see anyone exiting the vehicle. When the chase ended, he rushed to the vehicle and saw defendant sitting in the passenger seat. He testified he did not know if defendant "had been slung from the driver's seat to the passenger seat." Deputy Sullivan admitted he initially told dispatch that he saw two people in the vehicle, and he believed someone had been ejected. However, he testified after he reviewed the video footage of the chase, he only saw a driver and did not see anyone else in the vehicle. Deputy Sullivan stated, "I believe I had seen two people due to the headrest being extended a little bit further up. I thought I had seen two people in the moment." He acknowledged he panicked because he believed two people had potentially died in that moment (the person he believed to have been ejected and the driver of the vehicle upon which the car landed). He also stated he looked, but he did not see anyone else and did not find any evidence of someone being ejected from the vehicle. Deputy Sullivan

8

testified that once he calmed down and watched the video footage from the dash camera, he "learned that there was only one driver in the vehicle." He also stated he and the other responding officers did not find any blood or broken glass to indicate someone had been ejected. Deputy Sullivan acknowledged that after he watched the dashcam footage, he realized he had made a mistake, and there was only one person in the vehicle.

Deputy Charla McLeod testified she received a call regarding "a subject making threats" at a party. She also heard Deputy Sullivan state over the radio that he believed someone had been ejected from the vehicle. Deputy McLeod stated she arrived at the scene and immediately began searching the area for anyone who may have been ejected or had left the scene. She testified she and other emergency personnel searched the surrounding woods and were unable to find evidence of anyone being ejected from the vehicle. Deputy McLeod also stated she interviewed bystanders, and no one reported seeing a person being ejected from the vehicle.

Porche Bowen testified she was in the passenger seat of a vehicle waiting in line at the drive-thru of Quicker Liquor, a local liquor store. She stated she heard sirens and saw a car being chased by a police vehicle. She saw the vehicle strike something, "went airborne, went over the black Tahoe that was in front of me, and fell down on top of me and bounced off and landed behind me." Bowen described the driver of the vehicle and "a black male with a bald head."[2] She testified the person she saw was in the driver's

---

[2] The video established defendant, a black male, had a bald head at the time of the incident.

seat, and she did not see another person in the car. Bowen later reiterated, "I didn't see but one person in the vehicle." She stated she did not see anyone being ejected from the vehicle, and she did not see anyone open a door and exit the vehicle.

Further, other bystanders were interviewed on the scene; the interviews were recorded on the officers' body cameras. The bystanders stated they did not see anyone being ejected or exiting the vehicle. Additionally, the dash and body camera videos were admitted into evidence and played for the jury. Although the footage was dark, it appears only one person was visible in the vehicle. The video did not show anyone being ejected or jumping from the vehicle. Moreover, law enforcement officers and emergency medical personnel searched the area, and no injured person was found and there was no evidence to suggest anyone else had been in the vehicle.

Viewing the evidence in the light most favorable to the prosecution, we find the jury reasonably inferred defendant, the sole occupant of the vehicle, was driving the vehicle and was thrown into the passenger seat by the force of high-speed chase, the vehicle going airborne and flipping 360 degrees, and striking another vehicle. It is obvious from the verdict the members of the jury believed Deputy Sullivan's testimony that his initial impressions were wrong, and he made a mistake when he stated two people were in the vehicle and the driver was ejected when the vehicle went airborne. Accordingly, we find the evidence was sufficient to support defendant's conviction for aggravated flight from a police officer.

Defendant also contends the trial court abused its discretion in allowing the State to present evidence of his prior conviction after defendant agreed to stipulate to the status offense for purposes of the charge of possession of a firearm by a convicted felon. Prior to trial, the State noticed its intent to introduce evidence of defendant's prior felony conviction (armed robbery). Defendant filed a motion in limine seeking to limit the State's presentation of evidence of the prior felony and offering to stipulate that he had previously been convicted of an enumerated felony, and the completion of sentence was within the 10-year time period. The State declined to accept the stipulation, and the trial court denied the motion in limine and allowed the State to present evidence of the prior felony offense (armed robbery) during the trial.

Relying on the ruling in *Old Chief v. U.S.*, 519 U.S. 172, 117 S. Ct. 644, 136 L. Ed. 2d 574 (1997), defendant argues he offered the stipulation to prevent the jury from being unduly prejudiced against him. Defendant acknowledges Louisiana Supreme Court's holding in *State v. Ball*, 99-0428 (La. 11/30/99), 756 So. 2d 275. Nevertheless, he argues, "[I]n situations such as in this case, the admission of the evidence was unfairly prejudicial, and thus a due process violation."

As stated above, defendant was charged by bill of information with multiple offenses, one of which was possession of a firearm by a convicted felon. Possession of a firearm by a convicted felon requires proof of: (1) the possession of a firearm; (2) a previous conviction of an enumerated felony; (3) absence of the 10-year period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1; *State v. Ball*, *supra*; *State v. Husband*,

11

437 So. 2d 269 (La. 1983). A defendant's prior conviction for an enumerated felony is an essential element of the crime defined in La. R.S. 14:95.1, and the State may introduce evidence of defendant's previous felony convictions as proof of an element of the crime charged and the manner in which the present offense was committed. *State v. Ball*, *supra*; *State v. Sanders*, 357 So. 2d 492 (La. 1978).

In *Old Chief v. U.S.*, *supra*, the defendant was charged with various federal statutes, including a felon being in possession of a firearm. His prior conviction was for assault causing serious bodily injury. Like defendant herein, the defendant sought a pretrial ruling to prohibit the government from mentioning or offering any evidence of his prior conviction; in exchange, he offered to stipulate to the prior offense. The government refused to do so, and the district court denied the defendant's motion. The defendant was subsequently convicted, and he appealed the conviction, arguing his trial was tainted by unfair prejudice because the jury was told the name and nature of his previous felony conviction. After weighing the elements of the federal statute against the risk of undue prejudice, the United States Supreme Court reversed the defendant's conviction.

In *State v. Ball*, *supra*, the defendant raised the argument presented in *Old Chief*. The Louisiana Supreme Court stated:

> We conclude that *Old Chief* is not controlling and decline to follow it for the following reasons. First, the Court's decision was not based on constitutional principles which would be binding on the states, but instead was based on the specific language of 18 U.S.C. § 922. Also, we note that where a state statute is patterned after a federal statute, the United States Supreme Court's interpretation of the federal statute should be a persuasive influence on the interpretation of our own state enactment. Although the Louisiana statute was enacted after the federal statute, we have no indication that it was "patterned"

12

after the federal statute and in fact we have held that the Louisiana statute is less restrictive than the federal statute, which applies to all felonies, and does not provide for a prescriptive period. In other words, the Louisiana statute does not apply to all felonies, but only to some, and under the Louisiana statute there is a ten year prescriptive period, whereas under the federal statute there is none. *** Second, because the Louisiana statute defines the crime by specific enumerated prior offenses, contrary to the broad definition in the federal statute, *Old Chief* is distinguishable.

***

To the contrary, under the Louisiana statute, "the statutory language in which the prior conviction requirement is couched" *does* show "concern with the specific name or nature of the prior offense" and the name of the prior offense *does* address a "detail in the definition of the prior conviction element that would not have been covered by the stipulation." Because proof of one of the enumerated felonies is an essential element of the crime under La. R.S. 14:95.1, the probative value of the name and nature of the prior conviction is greater than the "generic" felony required by the federal statute.

Further, we hold that any additional prejudice to defendant by proving to the jury the name of the prior conviction is minimal, that is, it is much less damaging than telling the jury the defendant is a prior felon, which is absolutely essential under our statute and must be covered either by the state's proof or by defendant's stipulation.

***

*Id.*, at 278-9 (internal footnote and citations omitted).

In the instant case, the trial court fully advised the jury as to the law of

La. R.S. 14:95.1, and instructed the jury as follows:

***

[Defendant] is alleged to have possessed a firearm after having being convicted of a felony, namely armed robbery. You are instructed that you may consider evidence regarding the armed robbery conviction only with respect to whether that element of a prior conviction of an enumerated felony has been proven for purposes of the charge for which the defendant is now on trial. That is to say, you should not infer or conclude any negative impression solely and only because you believe that the defendant has a prior felony conviction.

***

13

Further, defendant's prior conviction was an essential element of the offense of possession of a firearm by a convicted felon, and the State was permitted to present evidence of the name and nature of defendant's prior conviction to the jury. For the reasons expressed by the Louisiana Supreme Court in *State v. Ball*, *supra*, we find the trial court did not err in denying defendant's motion in limine and allowing the State to introduce evidence of defendant's prior conviction for armed robbery to be admitted.

## CONCLUSION

For the reasons set forth herein, defendant's conviction and sentence are affirmed.

**AFFIRMED.**

**STEPHENS, J., dissenting.**

I respectfully dissent from the majority's finding that the evidence was sufficient to support the defendant's conviction for aggravated flight from a police officer.

An accused's mere presence at the scene is not enough to "concern" him in the crime. La. R.S. 14:24; *State v. Pierre*, 93-0893 (La. 2/3/94), 631 So. 2d 427, 428. Encompassed within proving the elements of an offense is the necessity of proving the identity of the defendant as the perpetrator. *State v. Garrison*, 19-62 (La. App. 5 Cir. 4/23/20), 297 So. 3d 190, 203, *writ denied*, 19-0205 (La. 4/29/19), 268 So. 3d 1034.

When the defendant disputes his identification as the perpetrator, the State is required to negate any reasonable probability of misidentification. *State v. Young*, 20-01041, p. 3 (La. 5/13/21), 320 So. 3d 356, 359; *State v. Kelly*, 55,087, p. 6 (La. App. 2 Cir. 6/28/23), 367 So. 3d 964, 969. Positive identification by only one witness is sufficient to support a conviction. *State v. Dorsey*, 10-0216 (La. 9/7/11), 74 So. 3d 603, *cert. denied*, 566 U.S. 930, 132 S. Ct. 189, 182 L. Ed. 2d 658 (2012); *State v. Kelly*, *supra*. The record falls short of evidence of a positive identification, and the circumstantial evidence does not exclude every reasonable hypothesis of innocence. I do not believe that a rational juror could have found proof of the defendant's guilt beyond a reasonable doubt in this case.